HENDRICKSON, JUDGE OF THE COUNTY COURT OF TAYLOR COUNTY, KENTUCKY, *v.* APPERSON.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 427.   Argued October 11, 1917.—Decided November 5, 1917.

A valid judgment was recovered against Taylor County, Kentucky, upon bonds which it had issued under a refunding act. 1 Acts Ky., 1877–78, p. 554. Under the law existing when the bonds were issued (Ky. Stats., 1894, § 4131), as construed by the highest court of the State, it was the duty of the county court when the office of sheriff was vacant to appoint a single collector, under a single bond, to collect all county taxes, including those levied to pay the county's debts. An amendment (Acts 1906, p. 153, § 3), as construed by the highest court of the State, authorized the county court to appoint more than one collector, under separate bonds, each charged with the duty of collecting such part of the taxes as should be designated in his appointment—an arrangement which made it possible to evade the satisfaction of the county's debts without interrupting its revenue for general county purposes. In a mandamus proceeding, the courts below directed the members of the fiscal court of the county to levy taxes to satisfy the judgment at the same time and by the same order which should provide for other county taxes and to place the tax bills for collection in the hands of the sheriff, and in case the sheriff, or successor, should not give bond and qualify, directed the county judge, when appointing a special collector, to include in his order of appointment a direction to collect both the levies to satisfy the judgment and all other levies of county taxes, and to continue such direction until a collector

should qualify and give bond, and to exact of him but one bond covering the collection of all the taxes. It was insisted on behalf of the county that, under the amendment, the county judge might appoint more than one collector and that his discretion in that regard could not be controlled by mandamus. *Held*, that the county's action in other cases, viewed with the present controversy, revealed well-defined plans of its officials, in notorious operation long before the passage of the amendment, to avoid payment of the county's adjudicated indebtedness and a deliberate design to deprive its creditors of an efficacious remedy provided by law and incorporated into its contracts; that this court could not ignore actual conditions and ought not, through assumptions out of harmony with patent facts, to facilitate the practical destruction of admitted legal obligations; that the circumstances made it clear that the right to have taxes levied to discharge the judgment collected along with taxes for general county purposes was a substantial and valuable one, and that, accepting as this court must the state court's construction of the laws involved, the amendment could not be sustained as a provision merely for the ordinary and orderly readjustment of administrative matters, but impaired the obligation of the contract under which the judgment creditors' bonds were issued.

In view of the decision of the Kentucky Court of Appeals declaring that an attempt to impose on the Circuit Court or judge thereof the duty of levying and collecting taxes is void under the state constitution, a provision for the satisfaction of bonds in that way, which is made in the Refunding Act of 1878, Acts 1877–78, p. 554, is ineffectual.

238 Fed. Rep. 473, affirmed.

THE case is stated in the opinion.

*Mr. Helm Bruce*, with whom *Mr. Abel Harding* was on the brief, for petitioner, in dealing with the constitutional question, urged the analogy between the case at bar and cases in which the repeal of the remedy of imprisonment for debt has been held not to impair the obligation of existing contracts. *Sturgess* v. *Crowninshield*, 4 Wheat. 122; *Mason* v. *Haile*, 12 Wheat. 370; *Beers* v. *Haughton*, 9 Pet. 329; *Vial* v. *Penniman*, 103 U. S. 717.

Like the threat of imprisonment for debt, the threat

of governmental paralysis overhanging a county if it cannot collect moneys for governmental purposes without collecting them also to satisfy debts is a kind of personal duress; and experience, in both cases, has shown that the duress is not productive of payment. Changes are allowable if reasonable, and of reasonableness the legislature is primarily the judge. If a state of facts could exist which would justify the change of remedy, it must be presumed that it did exist and that the law was passed on account of it. *Antoni* v. *Greenhow*, 107 U. S. 769. The Kentucky legislature may well have found that the provision for collecting all taxes through one collector under one bond was in practice of no value to the county's creditors, while productive of much public harm in the administration of the county government. The change in the law was therefore reasonable. The fact that the new remedy may be less convenient or more tardy than the old one does not render it objectionable. *Bronson* v. *Kinzie*, 1 How. 311. It has often been held that a remedy for collection is not inadequate merely because it does not produce satisfaction promptly. *Rees* v. *City of Watertown*, 19 Wall. 107. The condition of the law existing at the time of the contract, for collection of taxes through one collector, was not part of the contract. *Morley* v. *Lake Shore Ry. Co.*, 146 U. S. 162. All that the creditors have lost is a certain power growing out of the fear of anarchy or disruption of the county government, if the debt is not paid. The creditor has no vested right to the influence of such a fear as a part of his contract.

*Mr. L. A. Faurest*, with whom *Mr. A. E. Richards* and *Mr. Lewis Apperson* were on the briefs, for respondent.

*Mr. Ernest Macpherson*, by leave of court, filed a brief as *amicus curiæ*.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

Seeking to enforce a long-standing judgment against Taylor County, respondent instituted this proceeding (May, 1916) in the United States District Court at Louisville against County Judge Hendrickson and justices of the peace constituting the Fiscal Court. The judgment was based on bonds authorized by a special act of the Kentucky legislature approved in 1878 and entitled, "An Act for the benefit of Taylor county, empowering it to compromise its debts, issue bonds, and levy and collect taxes to pay the same" (1 Acts 1877–78, p. 554); they had been used to compromise and take up others issued under an Act of 1869, entitled "An Act to incorporate the Cumberland and Ohio Railroad Company" (1 Acts 1869, p. 463).

He asked a "writ of mandamus, commanding and requiring the defendants to levy a tax upon each one hundred dollars of property assessed for valuation in said county for the year 1916, sufficient to pay plaintiff's aforesaid judgment, interest and costs, and that they be required to include in the order making the levy for ordinary county purposes the aforesaid levy for the purpose of paying the aforesaid judgment; and to further direct the said W. T. Hendrickson, as county judge of Taylor county, that when he next appoints a collector whose duty it shall be to collect any or all items by a levy made by the Fiscal Court of Taylor county for any purpose, he shall embrace in said order of appointment a direction to the officer appointed to collect both the levy made to pay this judgment and the levy made and to be made for any item which may be levied by said Fiscal Court, and that said county judge shall continue to so embrace said directions in the same order of appointment until a collector is appointed who shall qualify as such collector, and said

county judge shall exact of him but one and a single bond to cover the collection of the levy made to pay this judgment, as aforesaid, and the item or items of any levy made by the Fiscal Court of Taylor county for any other purpose."

Answering, defendants set up: "That under the statutes of Kentucky, as construed by the Court of Appeals of Kentucky, the County Court of Taylor county has a discretion as to whether it will appoint one person to collect all moneys due the state and the county, and taxing districts therein, or as to whether it will appoint separate collectors and designate in the order of appointment of each collector what he shall collect, including the right and discretion to appoint one collector to collect taxes levied by the Fiscal Court of the county for ordinary county purposes, and another collector to collect taxes levied by the Fiscal Court for other purposes, such as the payment of judgments against the county, and to direct in each order of appointment what taxes the appointee thereunder shall collect, and for the collection of which he should be required to give bond. And they respectfully submit that this honorable court cannot, by its judgment, control the aforesaid discretion of the County Court of Taylor county, given it by the statutes of Kentucky as construed by the Court of Appeals of Kentucky."

Having heard the cause on demurrer to the answer, the trial court directed that appropriate levies be made during 1916, 1917, and 1918, to raise funds to satisfy respondent's judgment at the same time and by the same order which should provide for other county taxes. And further, "that said defendants and their successors in office, as the Fiscal Court of Taylor county, be, and they are hereby, ordered to place the tax bills for each of the aforesaid levies for collection in the hands of the sheriff of Taylor county, and his successor in office, if any, and

upon default of said sheriff to execute bond and qualify
for said office, then W. T. Hendrickson, county judge,
and his successor in office, if any, constituting the county
court of said county, is directed when he next appoints a
collector whose duty it shall be to collect any or all items
of any levy made, or which may hereafter be made by
the Fiscal Court of Taylor county for any purpose, to
embrace in said order of appointment a direction to such
officer appointed to collect both the levy made or which
may hereafter be made to pay this judgment and the levy
made or which may hereafter be made for any and all items
which are levied or which may be levied by said Fiscal
Court; and said county judge, acting as said county court,
shall continue to so embrace such directions in the same
order of appointment until a collector is appointed who
shall qualify as such collector by executing proper bond;
and said county judge shall exact of him but one and
a single bond to collect the levy made, or which may
hereafter be made to pay this judgment as aforesaid,
and the item or items for any levy made, or which may
hereafter be made by said Fiscal Court for any other
purpose,  .  .  ."

The Circuit Court of Appeals affirmed the action of the
District Court, but upon a different view, following
*Tucker* v. *Hubbert,* 196 Fed. Rep. 849, and *Graham* v.
*Quinlan,* 207 Fed. Rep. 268.

Petitioner maintains that § 4131, Kentucky Statutes,
as amended in 1906 and construed by the Court of
Appeals (*Commonwealth &c.* v. *Moody,* 150 Kentucky,
571), empowers the Taylor County Court to appoint one
collector of all county taxes; or, if so advised, to designate
more than one and direct each to collect certain taxes,
under a bond covering only those specified; and that such
discretion cannot be interfered with by mandamus.

Respondent maintains, that properly construed, § 4131
permits appointment of only one such collector; and that.

if the 1906 amendment means what petitioner asserts, it impairs his contract with the county, contrary to the Federal Constitution, Article 1, § 10.

It is stated, without contradiction, that prior to 1906 § 4131 embodied the applicable statutory provision concerning a collector in effect when the refunding bonds were issued. See Kentucky General Statutes, 1873, c. 92, Art. 8, § 2; Kentucky Statutes of 1894, § 4131.

The original section follows:

"Section 4131. On the failure of the sheriff or collector to execute bond and qualify as hereinbefore provided, he shall forfeit his office, and the county court may appoint a sheriff or collector to fill the vacancy until a sheriff or collector is elected, or it may appoint a collector for the county of all moneys due the State, county or taxing district authorized to be collected by the sheriff, or it may appoint a separate collector of all the moneys due the State, county or any taxing district thereof during the vacancy in the office of sheriff; and in the event the county court fails for thirty days to appoint a collector of money due the State, the Auditor of Public Accounts may appoint a collector thereof. Such collectors shall, within ten days after their appointment, execute bond as required by the sheriff, to be approved by the county court, and if the bond be not executed within said time the appointment of another collector may in like manner be made and qualified."

The amendment of 1906 added these words: "But such collector shall only be required to give bond for and collect such taxes or moneys as may be mentioned or provided for in the order of the county court appointing him."

In *Commonwealth &c.* v. *Wade's Admr.* (Oct., 1907), 126 Kentucky, 791, the Court of Appeals held, that, under the original section, where there was no sheriff only one person could be appointed to collect all county taxes.

In *Commonwealth &c.* v. *Moody* (Nov., 1912), 150 Kentucky, 571, the same court construed the amendment, and held, we are constrained to conclude, notwithstanding some grave doubts, that it authorized appointment of special collectors, each charged with the duty of collecting only some designated part of assessed county taxes. And, of course, this construction by the State's highest court must be accepted.

But so construed, we are of opinion that the amendment would impair the contract under which the bonds were issued, and upon which respondent has a right to rely. It cannot, therefore, be permitted to defeat the remedy theretofore available to him.

The doctrine of this court here to be applied has long been established.

In *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, 550, 552, 553, through Mr. Justice Swayne, we said:

"It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement. . . . Nothing can be more material to the obligation than the means of enforcement. Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfilment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion. The obligation of a contract 'is the law which binds the parties to perform their agreement.' The prohibition has no reference to the degree of impairment. The largest and least are alike forbidden. . . . It is competent for the States to change

the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired.   No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights.   Every case must be determined upon its own circumstances.   Whenever the result last mentioned is produced the act is within the prohibition of the Constitution, and to that extent void."

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,—by which the parties can be obliged to perform it.   Whatever legislation lessens the efficacy of these means impairs the obligation.   If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened."   *Louisiana* v. *New Orleans,* 102 U. S. 203, 206.   And see *Seibert* v. *Lewis,* 122 U. S. 284, 294, 295.

Considered in the light of Taylor County's notable and repeated successful efforts to avoid payment of adjudicated indebtedness and also in connection with the present controversy, we think it clear that the right to have any tax levied to discharge respondent's claim collected along with taxes for general county purposes was a substantial and valuable one.   The circumstances indicate a deliberate design upon the part of county officials to deprive its creditors of an efficacious remedy provided by law and incorporated into its contracts.   To give the amendment the effect claimed would render easier of accomplishment well defined plans obviously designed to defeat proper judicial process and in notorious operation long before its passage.   There is here something more than provision for the ordinary and orderly readjustment of administrative matters evidently intended to facilitate public business.   Actual conditions cannot be ignored, and

certainly we ought not, through assumptions out of harmony with patent facts and over-nice refinements, to facilitate the practical destruction of admitted legal obligations.

The declarations of the Court of Appeals of Kentucky in *Commonwealth &c.* v. *Wade's Admr.* (pp. 801, 802), are illuminating. Referring to the appointment of a separate collector charged with the sole duty of collecting a special tax ostensibly levied to satisfy a judgment against Taylor County, it said:

"There can be little doubt that the fiscal court, by what they did in the matter, were undertaking to nullify the judgment of the circuit court. The appointment of the special collector, Trotter, of whom nothing was ever afterward heard, and who in no way attempted to qualify as collector, or discharge the duties of that office, point to the fact that this was an arrangement by which the fiscal court could seemingly comply with the judgment, but without, in fact, accomplishing anything. This unlawful purpose could only be successful by the failure of the regular collector of 'the revenue to do his duty in the premises, and to collect the taxes provided for by the special levy. Such juggling with the decrees and judgments of the courts cannot be tolerated. Ours, as has often been said, is a government of laws, and, if the judgments of the courts enforcing the law may be thus nullified or disregarded either by overt act or culpable negligence, government is at an end. The county is as amenable to the law as an individual, and it is the high duty of its officials to enforce the law wherever and whenever they are its ministers. . . . It seems to us high time that it should be taught as a practical lesson, as well as a theory, that there are none so high as to be above the restraints of the law, or so low as to be beneath its protection."

The argument for petitioner, that the Refunding Act

of 1878 provided an exclusive remedy through application to the Circuit Court in case the County Court should fail in its duty, is not well founded. The decisions of the Court of Appeals in *Muhlenburg County* v. *Morehead,* 20 Ky. Law Rep. 376, and *Pennington* v. *Woolfolk,* 79 Kentucky, 13, make it quite plain that an "attempt to impose on the Circuit Court or judge thereof the duty of levying and collecting taxes is unconstitutional and void" under the jurisprudence of Kentucky.

The judgment of the court below is

*Affirmed.*