CITY OF PONTIAC *v.* SIMONTON.

1. MUNICIPAL CORPORATIONS—CHARTERS—TAXATION—DEBT SERVICE—
   CONSTITUTIONAL LAW.

   Amendment to city charter restricting power of taxation against
   property for all purposes to one and one-half per cent. of
   assessed valuation except taxes for debt service which were
   to be separately assessed *held,* to have placed city within con-
   stitutional 15-mill limitation as to taxation (Const. 1908,
   art. 10, § 21; Pontiac City Charter, chap. 9, § 13).

2. SAME—CHARTERS—TAXATION.

   Limitation on property tax rates of one and one-half per cent.
   for ''all purposes'' except debt service *held,* a limitation in
   city charter upon total of all taxes, rather than a limitation
   of 15 mills upon city taxes, where at time of adoption of
   amendment to charter containing such limitation, city's prop-
   erty was subject to taxation for State and county purposes
   (Pontiac City Charter, chap. 9, § 13).

3. CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION—STATUTES.

   Laws in existence at time municipal bonds are issued and under
   the authority of which such bonds are issued, enter into and
   become a part of the contract to the extent that obligation of
   the contract cannot thereafter be impaired or its fulfillment
   hampered by changes in such laws.

4. SAME—CHANGE OF STATUTE MUST DEPRIVE PARTY OF SUBSTANTIAL
   RIGHT.

   A contract obligation is not impaired by a change of law unless
   such change deprives a party of a substantial right or remedy.

5. SAME—REMAINING REMEDIES.

   Any legislation which renders remedy of holder of municipal
   bond less effective, or less convenient, or which changes his
   remedy or takes it away, impairs obligation of his contract,
   unless remedy substantially as efficacious remains, and least
   degree of impairment is as much prohibited as greatest.

6. SAME—CHARTER AMENDMENT—TAXATION—SEPARATE ASSESSMENT FOR DEBT SERVICES.

Amendment of city charter restricting power of taxation against property for all purposes to one and one-half per cent. of assessed valuation except taxes for debt service which are to be separately assessed *held*, not to have impaired obligation of contract of city's bonds theretofore issued in any material way by requirement as to separate assessment since legal remedies to secure payment remain as when debt service was assessed as part of city's general tax as per contract (1 Comp. Laws 1929, § 2230; Pontiac City Charter, chap. 9, § 13).

7. SAME—METHOD OF ASSESSING TAXES—CONTRACTS.

The method of assessing taxes, within constitutional limitations, is a matter of legislation not subject to control by contract.

8. COSTS—METHOD OF ASSESSING TAXES—PUBLIC QUESTION.

No costs are taxed in suit for declaration of rights under city charter amendment as to method of assessing taxes, the question being one of public concern (Pontiac City Charter, chap. 9, § 13).

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted May 9, 1935. (Docket No. 123, Calendar No. 38,425.) Decided May 17, 1935.

Petition for declaration of rights by City of Pontiac, a municipal corporation, against William H. Simonton and others to establish status of charter amendment and other relief. Decree for defendants. Plaintiff appeals. Reversed.

*William A. Ewart,* for plaintiff.

*Claude H. Stevens (Berry & Stevens,* of counsel), for defendants.

NORTH, J. The city of Pontiac has appealed from the decree entered in the circuit court upon the hearing of the city's petition for a declaration of rights (3 Comp. Laws 1929, § 13903 *et seq.*) relative to its duty in assessing taxes. Defendants and appellees

are the members of the bondholders' protective committee for the city of Pontiac, Michigan, and as trustees are the holders of practically all of the outstanding bonds of the city of Pontiac. On July 6, 1934, plaintiff and defendants entered into a contract which provided for refunding outstanding bonds of the city. Section nine of this contract provides:

"All taxes levied for the payment of principal and interest upon said refunding bonds *shall be levied as part of the general city taxes* and from time to time as city taxes are collected there shall be allocated to the several interest and sinking funds their respective proportions of such tax. All such interest and sinking funds shall be kept in separate bank accounts."

The city of Pontiac prior to November 2, 1934, because of its charter provisions, was not subject to the constitutional 15-mill limitation in levying taxes. *School District of City of Pontiac* v. *City of Pontiac,* 262 Mich. 338. On this account section nine of the agreement above quoted at the time the agreement was made did not in any way contravene the city's charter provisions relative to assessing and collecting taxes.

On November 2, 1934, the city charter was amended and the city's power of taxation brought within the 15-mill limitation. The amended charter provision reads (chap. 9):

"SECTION 13. The total amount of taxes assessed against property for *all purposes* in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property, except taxes levied for the payment of interest and principal on obligations heretofore incurred, known as 'debt service tax rates,' which sum shall be *separately* assessed in all cases; provided, that this limitation

may be increased for a period of not to exceed five years at any one time to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the qualified electors of any assessing district voting on the proposition.''

This amendment has given rise to the controversy submitted in the instant case. It appears from this record that the annual appropriation of the city for 1935, exclusive of taxes for debt service, will practically exhaust the city's power of taxation within its allocated proportion of the net limitation tax rate. This being true and also because the amended section of the city charter so provides, plaintiff contends that taxes for debt service should be entered separately upon the assessment roll. On the other hand defendants and appellees assert that section nine of the agreement should be followed and ''all taxes levied for the payment of principal and interest upon said refunding bonds (should) be levied as part of the general city taxes.''

Defendants' position is thus stated in their brief:

''It is the contention of the defendants that the separate assessment of the debt service taxes would impair the obligation of the refunding agreement, which provides that the same shall be levied as a part of the general city taxes. * * * It was definitely understood (at the time the refunding agreement was entered into) that the reason the defendants were insisting upon the retention of the provision requiring that debt service taxes should be levied with the general city taxes was to prevent any person advocating the payment of the general city taxes and the nonpayment of the debt service taxes.''

Notwithstanding defendants' contention to the contrary, it must be held that the amendment to the city's charter above quoted was intended to and clearly does place the city within the constitutional

15-mill limitation as to taxation. The charter amendment closely follows the wording of the constitutional amendment (Const. 1908, art. 10, § 21). Each provides: "The total amount of taxes assessed against property for *all purposes* in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property," except taxes for debt services. At the time the amendment was adopted the city's property was subject to taxation for State and county purposes. Hence the limitation of one and one-half per cent. for "all purposes" must be held to be a limitation upon the total of all taxes, rather than a limitation of 15 mills upon city taxes, as defendants assert.

Defendants' contention, above quoted from their brief, is not meritorious unless the city's refusal to assess taxes for debt service as a part of the general city taxes will deprive defendants of some substantial right afforded them by the terms of the refunding agreement, particularly section nine. It is true that laws in existence at the time of the issuance of municipal bonds, under the authority of which such bonds are issued, enter into and become a part of the contract to such an extent that the obligation of the contract cannot thereafter be impaired or fulfillment of the bond obligation hampered or obstructed by a change in such laws. *Von Hoffman* v. *City of Quincy,* 4 Wall. (71 U. S.) 535. But a contract obligation is not impaired by a change of law unless such change deprives a party of a substantial right or remedy.

"Any legislation which renders the remedy of the note holder less effective, or less convenient, or which changes their remedy or takes it away, impairs the obligation of their contract, *unless a remedy substantially as efficacious remains.* It is

not a question of the degree of impairment; the least is as much prohibited as the greatest." *Thompson* v. *Auditor General,* 261 Mich. 624, 640.

If, notwithstanding a change of law, the party can enforce his rights with substantially the same degree of effectiveness as before, his contract rights have not been violated. Hence it becomes important in the instant case to determine whether the change in the city's charter adversely affects defendants' rights in a material degree.

If taxes for debt service could be and were assessed as a part of the city's general taxes, as provided in the agreement, this would by no means guarantee payment. In the event of refusal to levy sufficient taxes for the debt service, or to allocate the just proportion of taxes for that purpose or to deposit such taxes in separate bank accounts, as provided in the agreement, it seems clear that defendants' only remedy would be resort to proper court procedure with its incident inconvenience, expense and delay. And if there was default in payment of such taxes the usual remedies, and no others, could be resorted to through the city officials. Defendants will possess these same remedies and will suffer no material disadvantages if the debt service taxes are separately spread upon the assessment roll rather than as a part of the general city taxes. In so holding we do not overlook defendants' argument that in event debt service taxes are upon the tax roll separate and apart from the city's general taxes, a taxpayer may decline to pay the former and pay the latter. We think this a rather far-fetched possibility. The argument is not wholly unlike that advanced by plaintiff in a recent case, but rejected by this court, relative to increasing the

legal limitation of bonded indebtedness. The claim made was that a legislative act increasing the limitation of bonded indebtedness impaired the obligation of previously issued bonds, in substance, because it lessened the probability of payment. *Harsha* v. *City of Detroit,* 261 Mich. 586 (90 A. L. R. 853). As before stated, notwithstanding the amendment to the city charter, defendants will still have the same remedies and means of enforcing their obligation against the city as they would have had in event of the nonpayment of the debt service tax were such tax levied as a part of the city's general tax.

Appellees quote from and rely much upon *Moore* v. *Gas Securities Co.* (C. C. A.), 278 Fed. 111, and *Hendrickson* v. *Apperson,* 245 U. S. 105 (38 Sup. Ct. 44). Each of these cases is clearly distinguishable from the instant case.

In the *Moore Case* the court considered a statutory amendment passed subsequent to the issuance of the bonds the collection of which was claimed to have been adversely affected thereby. Even a casual reading of the opinion discloses that the amendment did have such an effect, and the court properly held the amendment ineffective as against the rights of a bondholder. Since, as we have hereinbefore indicated, the amendment to the charter of the city of Pontiac does not impair the right of holders of its bonds to enforce collection, decision in the *Moore Case* is not applicable to the instant case.

A rather caustic opinion in the *Hendrickson Case* condemns and holds invalid a statutory amendment which the court found was passed for the express purpose of enabling a county to evade payment of a judgment theretofore rendered against it on

bonded indebtedness. Referring to the amendment the court held in substance that it was (quoting from syllabus):

"An arrangement which made it possible to evade the satisfaction of the county's debts without interrupting its revenue for general county purposes. * * * that the county's action in other cases, viewed with the present controversy, revealed well-defined plans of its officials, in notorious operation long before the passage of the amendment, to avoid payment of the county's adjudicated indebtedness and a deliberate design to deprive its creditors of an efficacious remedy provided by law and incorporated into its contracts."

In the body of the opinion the court further said:

"There is here something more than provision for the ordinary and orderly readjustment of administrative matters evidently intended to facilitate public business. Actual conditions cannot be ignored, and certainly we ought not, through assumptions out of harmony with patent facts and over-nice refinements, to facilitate the practical destruction of admitted legal obligations."

The issue presented in the instant case by no means comes within the scope of decision in the *Hendrickson Case.*

In this State it has long been the policy to segregate the respective items of taxes to which property may be subjected. This is an important right of the property owner. Otherwise he would be deprived of his right to pay under protest and secure judicial determination as to the validity of a tax which he might consider illegal. See 1 Comp. Laws 1929, § 3444 (as amended by Act No. 32, Pub. Acts 1931). For years the general property tax law has provided:

"The supervisor of each township or ward, and the assessing officer of each city or village, as provided by law, shall proceed to assess the taxes apportioned to his township, or assessment district. * * *  Such taxes shall be entered in separate columns, as follows:   All school taxes and the one-mill tax in one column, highway taxes in another, township taxes in another, county taxes in another, and the State taxes in another column; *and if other taxes are at any time required to be raised, they shall be placed in separate columns.*"   1 Comp. Laws 1929, § 3428.

Plaintiff city is incorporated under the home rule city act, and this act provides that within certain limitations its tax procedure for city purposes may be such as are provided in its charter. 1 Comp. Laws 1929, § 2230.  It may be conceded that under its city charter prior to the November, 1934, amendment invalidity would not have resulted from the levying of a tax for debt service as a part of the general city taxes.  But since public policy is involved, it may well be questioned whether defendants could enter into a valid and binding contract with the city which would control its method of assessing taxes.  This, within constitutional limitations, is a matter of legislation.  But because, as above stated, we are of the opinion that the amendment to the city charter does not in any material way impair defendants' contractual rights, no ground appears for holding such amendment to be invalid or unenforceable as against defendants or the bondholders whom they represent.  We therefore hold, as sought in plaintiff's prayer for relief:

1.   That the said charter amendment is legal and valid and brings the city of Pontiac within the opera-

tion of the 15-mill amendment to the Constitution, as provided in article 10, § 21.

2. That municipal taxes for debt service shall be assessed separately from general city taxes according to the mandate of said charter amendment.

The decree entered in the circuit court will be set aside and one entered in this court in accordance herewith. This being a matter of public concern, no costs will be taxed.

POTTER, C. J., and NELSON SHARPE, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.