## REPPEL v. BOARD OF LIQUIDATION et al. (THEARD et al., Interveners).
### No. 287.

District Court, E. D. Louisiana, New Orleans Division.

July 24, 1935.

800

George Seth Guion and Joseph W. Carroll, both of New Orleans, La., for plaintiff.

Geo. M. Wallace and Peyton R. Sandoz, both of Baton Rouge, La., and H. A. Moise and Jas. Wilkinson, both of New Orleans, La., for State of Louisiana, Board of Commissioners, Port of New Orleans, etc.

E. M. Robbert and H. B. Curtis, both of New Orleans, La., for City of New Orleans.

J. C. Henriques, of New Orleans, La., for Board of Liquidation, City Debt, etc.

Before FOSTER, Circuit Judge, and BORAH and McDUFFIE, District Judges.

FOSTER, Circuit Judge.

This is a suit brought by the holders of bonds, issued under the provisions of Act No. 6 of 1899 of the Louisiana legislature (Ex. Sess.), to enjoin the operation and enforcement of Act No. 36 of the Second Extra Session of the Louisiana Legislature of 1934, which amends Act No. 6 of 1899 (section 8), by making changes in the composition and personnel of the sewerage and water board of New Orleans created by said act, on the grounds that the amending act violates both the State and Federal Constitutions. The legislative and judicial history of the sewerage and water board is as follows:

In 1899 the property taxpayers of New Orleans petitioned the city council to call an election for the purpose of imposing a special and additional tax of 2 mills upon the assessed valuation of the property of the city, for the purpose of constructing a sewerage and water system; to complete the public drainage system of the city; to authorize the capitalization of the taxes and issue bonds; and to create a sewerage and water board to construct and administer the sewerage, water, and drainage systems, to be composed of designated members. An ordinance was adopted by the city, incorporating the petition in extenso, and calling the election. The election carried. Thereafter the Louisiana Legislature, at a special session, held in 1899, adopted Act No. 6 of 1899, hereafter referred to as Act No. 6, which in various sections tracked and incorporated the petition and the ordinance.

Act No. 6 provided that the whole proceeds of the special tax of two mills voted by the taxpayers and one-half of the surplus of an existing 1 per cent. debt tax, levied by virtue of article 314 of the Louisiana Constitution of 1898 (originally provided for by a constitutional amendment in 1890), for the purpose of liquidating the bonded indebtedness of New Orleans, should be capitalized by issuing bonds of the city of New Orleans, dated July 1, 1900, having fifty years to run, bearing interest not exceeding 4 per cent. per annum, such bonds to be sold only as needed, at not less than par and accrued interest, and the proceeds to be applied exclusively to the purposes of constructing and completing the sewerage, water, and drainage systems. Bonds to the extent of $12,000,000 were first issued, and by subsequently authorized issues this amount was raised to $29,000,000.

Section 5 of the act provided that the board of liquidation of the city debt, created by act of the Legislature in 1890,[1] ratified by constitutional amendment, and given exclusive control of all matters relating to

[1] Act No. 110 of 1890.

the bonded debt of New Orleans, should receive the proceeds of the sale of the improvement bonds and the proceeds of the special tax and should deposit those funds, with the surplus of the 1 per cent. debt tax, with the fiscal agent of the city, to the credit of a special fund called the public improvement fund. Interest on the bonds was made payable semiannually by preference out of this fund, the surplus, less 20 per cent. reserved annually, to be used for completing and extending the work. The board of liquidation was especially charged with the payment of the principal and interest of the bonds aforesaid, and it was provided that all payments made by the sewerage and water board should be made by warrants on the board of liquidation. The board of liquidation of the city debt of New Orleans is a permanent, self-perpetuating body, composed of six citizens and the mayor, treasurer, and controller of New Orleans as members ex officio.

Act No. 6 provided for the creation of a sewerage and water board for the purpose of constructing, controlling, maintaining, and operating a public water system and public sewerage system for the city, to be composed of the members of the drainage commission, as then constituted, but not of any additional members that might be added, and seven citizens, of two years previous residence, each possessing property in the city, assessed in his name, one in each of the seven municipal districts of the city, to be appointed by the mayor for twelve years, one appointment expiring every two years, with the consent of the council, vacancies to be filled in the same manner.

The drainage commission of New Orleans was created by act of the Legislature in 1896 (Act La. No. 114 of 1896), to be composed of the mayor and chairmen of the committees of finance, budget, water, and drainage of the city, the president and two other members of the board of commissioners of the Orleans levee district, and the president and one other member of the board of liquidation of the city debt.

Section 35 of Act No. 6 provided that the General Assembly reserved the right and power to amend the act in any respect not violative of the conditions upon which the special tax was voted and not impairing the vested rights or the contract rights of the holders of the bonds issued under its provisions.

An amendment to the Constitution of 1898 was adopted, which ratified the special tax, provided that its validity should never be questioned and that the act constituting the sewerage and water board, authorizing the city of New Orleans to issue bonds, providing the means to pay the principal and interest thereof, and for other purposes cognate to the purposes of the special tax was ratified and approved, including the reserved legislative right to amend the act. This amendment was carried into the Constitution of 1921 in section 23 of article 14.

Act No. 6 further provided that members of the board should be removed from office only in the manner and for causes enumerated in articles 217 and 222 of the State Constitution. These articles provided for removal of various state officers by impeachment or suit in existing courts, according to the office.

By Act No. 111 of 1902 the Louisiana Legislature sought to make changes relative to the composition of the sewerage and water board as provided for by Act No. 6. In the case of State ex rel. Saunders v. Kohnke, 109 La. 838, 33 So. 793, decided January 19, 1903, the Supreme Court of Louisiana held Act No. 111 of 1902 to be null and void.

By Act No. 36 of the Second Extra Session of 1934, hereafter referred to as Act No. 36, adopted November 21, 1934, the Louisiana Legislature again sought to change the composition of the sewerage and water board by providing that the board should be composed of the mayor and the commissioner of public utilities of New Orleans; the chairman of the board of health for the city of New Orleans; two members of the board of liquidation of the city debt; three members of the board of commissioners of the Port of New Orleans; three members of the board of commissioners of the Orleans levee district; one member of the state board of health; and one member of the board of control of the New Basin Canal and the Shell road, all of the members of said boards to be appointed by the mayor on the recommendation of the various boards. The act further provided that the drainage commission should be merged with the sewerage and water board and all its authority, duties, and obligations should be exercised and discharged by that board. This omitted the seven citizen taxpayers as provided by Act No. 6.

On December 5, 1934, one day before Act No. 36 became effective, the Governor of Louisiana instituted a suit in a state court to test the validity of Act No. 36. Other suits of similar character were also filed in state courts. These suits were consolidated on appeal and on May 11, 1935, after this suit was brought, but before the hearing on an application for an interlocutory injunction, under the title of State ex rel. Porterie, Attorney General, v. Walmsley, Mayor of New Orleans, 162 So. 826, the Supreme Court of Louisiana handed down a decision declaring Act No. 36 to be valid.

This suit was filed on May 1, 1935, by Orlander Chester Reppel, a citizen of Louisiana, residing in New Orleans, on behalf of himself and all others similarly situated, who were invited to join, against the various individuals named as members of the new sewerage and water board by Act No. 36, and against the various boards authorized by said act to recommend members for appointment. The bill is lengthy, but the material allegations, in substance, are these:

Plaintiff is the owner and holder of four of the public improvement bonds of the city of New Orleans, each in the sum of $1,000, which he purchased on the faith of the provisions of Act No. 6, as interpreted by the decision in State ex rel. Saunders v. Kohnke, 109 La. 838, 33 So. 793, after the rendition of that judgment; that the change in personnel of the sewerage and water board made by Act No. 36, especially the elimination of the seven citizen taxpayers to be appointed by the mayor, is a violation of his contract as holder of the said bonds; that the composition of the board was one of the specific conditions upon which the taxpayers of New Orleans voted the special 2 mills tax, and if this condition is violated, the taxpayers will be relieved from the obligation of paying the said tax; that the change in the sewerage and water board subjects him to the risk of mismanagement of the water and sewerage systems of New Orleans, which will result in the said systems falling into disrepair and result in a decrease of the proceeds of the tax, with resulting injury to the credit of the city, which would in turn involve a depreciation in the market value of his bonds; that the act impairs the obligation of his contract with the city and deprives him of his property without due process of law, in violation of the Federal Constitution and, further, violates corresponding articles and various other articles of the Constitution of Louisiana, which are specifically referred to. He prayed for preliminary and final injunctions and for the organization of a statutory court of three judges to hear the case, under the provisions of section 266, Judicial Code (28 USCA § 380). Before a hearing on the application for an interlocutory injunction, Charles J. Theard and others, trustees of the Simon Hersheim Memorial Library fund, owning seven of the bonds, totaling $7,000, were permitted to intervene. They adopted the allegations of the bill and prayed for the same relief.

■ Defendants moved to dismiss the bill for want of jurisdiction, on the ground that none of the defendants are state officers and sufficient amount is not involved. It is quite clear that the suit is to enjoin the operation and enforcement of a state statute on the ground of unconstitutionality. We entertain no doubt that the board of commissioners of the Port of New Orleans and the board of commissioners of the Orleans levee district are public boards of the state. Their recommendations of members to be appointed on the new sewerage and water board would be mandatory to the mayor and would be executive orders. The other defendants are proper parties, whether they be considered municipal officers or as acting in state capacities in enforcing the state statute. Their inclusion would not defeat jurisdiction. As to the amount involved, the trustees of the Hersheim fund, having been permitted to intervene, must be considered the same as an original plaintiff. French v. Gapen, 105 U. S. 509, 26 L. Ed. 951. The interest alone on their bonds, payable out of the 2-mill tax, exceeds $3,000. Objection to the jurisdiction is without merit.

■ While there is no dispute as to the facts, we have somewhat fully reviewed the history of the sewerage and water board and stated the material averments of the bill for a better understanding of the issues. The case presented is in narrow compass and involves only the rights of the bondholders. It is well settled that a party has no standing in a court of equity to attack the constitutionality of a statute on any ground that does not affect him personally, regardless of how it may affect others. Hooker v. Burr, 194 U. S. 415, 24 S. Ct. 706, 48 L. Ed. 1046; McCabe v. Atchison, Topeka & Santa Fé Rail-

way Co., 235 U. S. 151, 35 S. Ct. 69, 59 L. Ed. 169.

Plaintiff relies upon the decision in State ex rel. Saunders v. Kohnke, 109 La. 838, 33 So. 793, and defendants with equal confidence rely upon the case of State ex rel. Porterie, Attorney General, v. Walmsley, Mayor of New Orleans, both above referred to. As the parties earnestly contend that these cases are decisive of the issues presented, we may briefly review them.

The first-named case was in the nature of a quo warranto proceeding, brought by a taxpayer against members of the new sewerage and water board, created by Act No. 111 of 1902, to prevent their taking office. The Supreme Court held that a taxpayer had the right to enter the suit, under the provisions of article 869, La. Code of Practice; that as no consideration moved to the state in the adoption of Act No. 6 other than that underlying all legislation, the general welfare, a contract was not created between the state and the taxpayers. Construing the provisions of the constitutional amendment adopted in 1900, in connection with Act No. 6, the court held that the creation of a sewerage and water board, with an especially designated personnel to administer the avails of the tax, was a condition upon which the tax was voted and, notwithstanding the right of amendment reserved, the Legislature was without power to change the board. As a further ground of invalidity, the court also held that the provisions of articles 319 and 320 of the Louisiana Constitution of 1898, under which the electors of New Orleans were given the right to choose the public officers charged with the exercise of the police power within the city and with the administration of the affairs of the corporation, in whole or in part, applied to the sewerage and water board. The decision was silent as to any rights of the bondholders.

In State ex rel. Porterie, Attorney General, v. Walmsley, Mayor of New Orleans, the Supreme Court approved the previous decision of State ex rel. Saunders v. Kohnke, so far as it held a contract had not been created between the state and the taxpayers, but differently interpreted the constitutional amendment of 1900 and held that a change in personnel of the sewerage and water board did not affect the validity of the tax and therefore the constitutional amendment did not prohibit the Legislature from making such change. It was further held that the provisions of articles 319 and 320 of the Constitution of 1898, construed in State ex rel. Saunders v. Kohnke, had been purposely omitted from the Constitution of 1921, and by section 22 of article 14 of said Constitution the state was reinvested with full police power over the city of New Orleans; that the right of the electors of the city to choose its public officers had been restricted to those controlling the ordinary functions of municipal government; and that the sewerage and water board did not perform such functions. After elaborate discussion, the conclusion was reached that the Legislature was at liberty to amend the statute and change the personnel of the sewerage and water board and that Act No. 36 was valid and did not impair the contract between the bondholders and the city. In this connection it was pointed out that under the provisions of section 24 of article 14 of the Constitution of 1921, as amended (see Act No. 182 of 1924), the validity of the bonds and the tax could never be questioned, and, if the city of New Orleans should refuse to levy and collect the tax, any court of competent jurisdiction could levy the tax and collect it through its executive officers at the instance of the bondholders.

An early decision of the highest court of a state validating state or municipal obligations becomes important when a later decision holds the obligations invalid because of initial defects in their issue or a change in the law. In such cases the later decision is held to operate prospectively only and the validity of the obligations accepted or purchased on the faith of the earlier decision is upheld. Undoubtedly, the decision in State ex rel. Saunders v. Kohnke, entered into and became part of Act No. 6 before plaintiff and interveners purchased their bonds and they are entitled to rely upon it so far as it goes. Inferentially the decision approved the validity of the bond issue, but no rights of bondholders were adjudicated and the decision added nothing to the law in that respect, as there was not the slightest doubt on that point before it was rendered. The decision in State ex rel. Porterie v. Walmsley takes no rights guaranteed by the Federal Constitution from the bondholders, and we consider we are bound to follow it, so far as it decides the local questions involved herein.

Sioux County v. National Surety Co., 276 U. S. 238, 48 S. Ct. 239, 72 L. Ed. 547.

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened." Hendrickson v. Apperson, 245 U. S. 105, 38 S. Ct. 44, 45, 62 L. Ed. 178.

The contract of plaintiff is with the city of New Orleans and not with the sewerage and water board. It is the duty of the city to levy and collect the taxes out of which the bonds are to be paid. It is the duty of the board of liquidation to pay the bonds in principal and interest as the agent of the city. The sewerage and water board is not charged with any duty in respect of the levying of the tax, its collection, or the payment of the bonds. No property of the sewerage and water board is pledged as security for the bonds. Act No. 36 does not affect the collection of taxes or payment of the bonds at all.

■ It cannot be assumed that the new sewerage and water board will be any less efficient than the old board, but if it should prove to be incompetent, that could hardly affect the bondholders. The funds to liquidate the bonds are set aside by preference out of the proceeds of the tax by the board of liquidation and do not go to the sewerage and water board. The sewerage and water board cannot dissipate the fund allocated to the payment of the bonds in any way. The danger alleged that mismanagement of the water and sewerage systems would result in injury to the credit of the city is too remote and speculative to require serious consideration. The taxpayers could not refuse to pay the special tax because of a change in the personnel of the sewerage and water board. And, furthermore, a political corporation issuing bonds does not guarantee their market value after sale.

■ There has been no default in the payment of interest on the bonds, the debt has not been repudiated, and it is not shown that the city will be unable to meet its obligations as they mature. It follows that so far as the contract between the city and the bondholders is concerned Act No. 36 does not impair the obligation of the contract nor deprive the bondholders of their property without due process of law, in violation of the Federal Constitution or corresponding clauses of the State Constitution (Const. U. S. art. 1, § 10; Amend. 14; Const. La. 1921, art. 4, § 15; art. 1, § 2).

■ It can hardly be said that the change in personnel of the sewerage and water board affects any vested rights of the bondholders, but, if it be conceded for the purpose of discussion that it does, the answer is plain. Vested rights are not mentioned in the United States Constitution and they cannot be asserted against the police power of the state. In the exercise of the police power, a state Legislature may pass a law which divests rights vested by law, provided its effect be not to impair the obligation of a contract. Randall v. Kreiger, 23 Wall. 137, 23 L. Ed. 124; Campbell v. Holt, 115 U. S. 620, 6 S. Ct. 209, 29 L. Ed. 483; Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927.

The application for an interlocutory injunction is denied.

McDUFFIE, District Judge (dissenting).

In this case certain taxes were voted on certain conditions for sewerage and water bonds in the city of New Orleans. These bonds were issued and purchased with both a statutory and constitutional assurance that the conditions under which the taxes were voted would not be disturbed. The act of the Second Extra Session of the Louisiana Legislature of 1934 (No. 36) strikes down certain conditions which, it is claimed by the bondholders, are, in effect, written in the bonds. The question arises therefore as to whether or not this act tends to postpone or retard the enforcement of the contract between the city of New Orleans and its taxpayers and the holders of the bonds. If such an act diminishes in value the quality, excellence, or strength, if it deteriorates, damages, weakens, or enfeebles the obligations of the contract, it, of course, violates section 10 of article 1 of the Federal Constitution.

In the case of Hendrickson v. Apperson, 245 U. S. 105, 38 S. Ct. 44, 45, 62 L. Ed. 178, it is held that whatever legislation lessens the efficiency of the means provided by law for the enforcement of a contract impairs the obligation. The court in that case said: "If it [the legislation] tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened."

Believing that one of the considerations of the contract here under study was the major condition involving the composition of the sewerage and water board, I cannot agree with the conclusion of the majority of the members of this court that the interest of the holders of the bonds of the city of New Orleans, issued under Act No. 6 of 1899, Ex. Sess., for the purpose of securing the necessary funds for the construction, maintenance, and operation of a sewerage and water system to secure the permanent health of the city, was limited under the act to the *mere enforcement* of the special *taxes* provided for their payment.

The holders of the bonds were further interested and indeed had the statutory and constitutional guarantee that the control of the sewerage and water system by the taxpayers of the city through their majority representation by seven members of the board should never be changed, for by such control the sufficiency of the assessed value of the property in the city of New Orleans for the payment of such bonds, according to the obligations thereof, was reasonably assured.

As pointed out in the majority opinion, "Act No. 6 provided for the creation of a sewerage and water board for the purpose of constructing, controlling, maintaining, and operating a public water system and public sewerage system for the city, to be composed of the members of the drainage commission, as then constituted * * * and seven citizens, *of two years* previous residence, *each possessing property in the city,* assessed in *his name, one in each of the seven municipal districts of the city.*" Put differently, the seven citizens were to be:

(1) Persons who by two years residence were familiar with the sewerage and water needs of the city; (2) vitally interested as, themselves, owners of the property to be favorably or unfavorably affected by the new system as the case might be; and (3) familiar with and having a personal interest in the problems of their respective districts.

The requirements italicized were undoubtedly inserted to assure the taxpayers and other citizens of New Orleans that the construction, control, maintenance, and operations of the sewerage and water systems would be economical and efficient, and they voted the tax on their property therefore with that promise. It is reasonable to say that it constituted a promise that the usefulness and, consequently, the value of their property would not be diminished by the fact and the manner of the construction of the water and sewerage system, and the subsequent control, maintenance, and operation thereof, but, on the contrary, would be enhanced.

To the purchasers of the bonds, the italicized requirements were likewise a promise. Of what avail to them that the proceeds of the tax when collected would be impounded for their benefit, if the source from which the tax was to flow dried up by reason of diminution or destruction of the value of the assessed property by inefficient construction or maintenance of the sewerage and water system. They had a right to rely upon the promise written into the statute and therefore into their bonds that that source would not be dried up; that the value of the property would be maintained by management of the sewerage and water system by persons of whom nature's first law (self-preservation) would require prudent and proper management.

It seems impossible to escape the conclusion that this guaranty that the control of the board should never be changed was inserted in the act to attract and satisfy investors and thereby obtain sufficient funds for the construction of the sewerage and water system to permanently secure the health of the city, in which the state itself was materially interested, for the 2-mill tax had already been authorized by the vote of the taxpayers of the city and their petition for the holding of an election for such tax, and the issue of the bonds contained no stipulation that such control of the taxpayers should ever be changed. The Legislature doubtless had in mind the need of security for the payment of the bonds in order to make them attractive because section 1 of the act of 1899 provides that in the event the 2-mill tax should not be sufficient to pay all the interest on said bonds, the deficiency should be funded into the bonds, which the act provides "shall have all the guarantees and securities provided for the original bonds in said ordinance No. 15,391 C. S. and in this Act for their payment of principal and interest."

The control of the sewerage and water board by taxpayers may have been inserted for the benefit of the taxpayers of the city of New Orleans, but the *guarantee that such control should be, and* (as affecting

the bonds in question) *would be perpetual, was intended as a "guarantee and security" for the bondholders.*

This guaranty constituted a part of the contract of each bond *as if set forth therein and tended to secure its payment.*

The business management of the sewerage and water system by taxpayers, who were resident citizens of the city of New Orleans, and owners of property therein, tended to secure not merely the health of the city, but also a taxable value of the property therein, which would be sufficient for the payment of the bonds.

The bonds have many years yet to run. Who can say that the danger of mismanagement, that it was deemed advisable in 1899 to guard against so carefully, may not, before the bonds mature, operate to "postpone or retard" enforcement of the obligation of the contract evidenced by the bonds? While in the Kohnke Case (State ex rel. Saunders v. Kohnke), 109 La. 838, 33 So. 793, 803, the right of the bondholder was not directly the issue presented and decided, yet the decision undoubtedly strengthened the bondholders' rights, because while the tax was being fastened in the Constitution, the Supreme Court of Louisiana said, in effect, that the composition of the sewerage and water board as set up by the Legislature of 1899, to plan, maintain, and operate a sewerage and water system for the city of New Orleans *could not be changed.*

The court said: "We hardly think it would be taking a practical or sensible view of the situation to interpret the [constitutional] amendment so as to leave the matter of the bonding vel non of the avails of the tax, and the matter of the constituting vel non of a special board to administer these avails, within the discretion of the Legislature, while the tax itself was being secured hard and fast in the framework of the Constitution. We think that the practical and sensible view to take is that the agents of the taxpayers who framed the amendment did their work with a view to conserving these conditions; in other words, that the amendment means exactly and precisely what it says, namely, that 'the tax voted' and 'the tax levied' is ratified, and shall never be questioned; that is the tax as voted and as levied, subject to the conditions upon which it was voted and levied."

The purchaser of the bonds relied upon the act as it was interpreted and written in the constitutional amendment of 1900, construed in the Kohnke Case and reaffirmed in the Constitution of 1921. His rights must be considered as of the time and under the conditions he purchased the bonds.

Act No. 36 of the Louisiana Legislature, 2d Ex. Sess. 1934, repealing the provision for control of the system by taxpayers, substituting therefor the control of that system by officeholders of both city and state, selected without reference to their special interest in the proper management of such system, deprived the holders of the bonds of the aid to their enforcement by the control of the taxpayers which had been guaranteed statutorily and constitutionally and impaired the obligation of their contract.

For the foregoing reasons, I am of the opinion that the interlocutory injunction prayed for should have been granted.