## NICHOLS v. STATE ADMINISTRATIVE BOARD.

1. BONDS—REVENUE—BRIDGES—HIGHWAY IMPROVEMENTS.

   Revenue bonds for construction of bridge do not constitute an indebtedness of the State within meaning of provision of the Constitution limiting State indebtedness for improvement of the highways, where statute providing for their issuance declared they were payable solely from revenues of the State agency constructing and operating the bridge and source of payment was stated on the face of the bonds as well as that they are not general obligations of the State (Const 1908, art 10, § 10; PA 1952, No 214, as amended by PA 1953, No 141).

2. SAME—REVENUE—GENERAL OBLIGATION OF STATE.

   Revenue bonds of State agency do not become general obligation bonds of the State on the theory that the principal is liable for the acts of its agent, where the authorizing statute and the bonds both state they were payable solely from revenues and were not general obligations of the State (PA 1952, No 214, as amended by PA 1953, No 141).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 43 Am Jur, Public Securities and Obligations § 285.
[3] Obligation to meet which money is appropriated at the time of its creation as an indebtedness within limitation of indebtedness. 92 ALR 1299, 134 ALR 1399.
[4, 5] 49 Am Jur, States, etc. § 63.
[6] 43 Am Jur, Public Securities and Obligations § 16 et seq.
[7] 42 Am Jur, Prohibition § 40.
Taxpayer's right to maintain action to enjoin wrongful expenditure of public funds, as affected by the fact that the funds in question were not raised by taxation. 131 ALR 1230.
[8] 14 Am Jur, Costs § 23.

3. STATES—CONTRACTS—EARMARKED FUNDS—IRREVOCABLE PLEDGE.

   The payment of not to exceed $417,000 during any fiscal year from taxes earmarked for highway use and imposed on gasoline and motor fuels and motor vehicles registered in the State for operation, repair and maintenance of bridge which was to become a part of the highway system of the State, the same as ferries operating across the straits have been considered and which have been .operated at an average annual loss of over $500,000 during past 5 years, constituted an irrevocable pledge of such earmarked funds but not a general indebtedness of the State subject to the limitation placed upon highway improvement by the Constitution (Const 1908, art 10, §§ 10, 11; PA 1952, No 214, as amended by PA 1953, No 141).

4. SAME—CONTRACTS—DURATION OF CURRENT SESSION OF LEGISLATURE.

   A legislature may adopt a policy of contracting in respect to public business for a term longer than the life of the current session of the legislature.

5. SAME—CONTRACTS—STATUTES.

   Statutes existing at the time of the issuance of bonds by a State agency and relevant thereto enter into and form a part of the contract as if they were expressly referred to and incorporated in its terms.

6. SAME—CONTRACTS—BRIDGE REVENUE BONDS—PLEDGE OF EARMARKED HIGHWAY FUNDS—STATUTES.

   The contract existing between the holders of bridge revenue bonds issued by a State agency, a bridge authority, pursuant to a statute wherein State agreed to pay to the authority from funds earmarked for highway use not to exceed the sum of $417,000 per year for maintenance, operation and repair of the bridge included the statutes authorizing the collection of taxes for such special fund for highway use (PA 1952, No 214, as amended by PA 1953, No 141).

7. PROHIBITION—STATE AGENCY—PLAINTIFF—DAMAGE.

   Plaintiff has no standing in court to obtain writ of prohibition and stay of all proceedings to prevent the consummation of the sale and delivery of bridge revenue bonds by a State agency, where he sues as a taxpayer and user of highways but fails to show he will sustain a substantial injury or suffer loss or damage as a taxpayer through increased taxation and the consequences thereof (PA 1952, No 214, as amended by PA 1953, No 141).

8. COSTS—PUBLIC QUESTION—VALIDITY OF REVENUE BOND ISSUE.
No costs are allowed in proceeding to obtain a writ of prohibition involving the validity of revenue bond issue of a State agency, a public question being involved (PA 1952, No 214, as amended by PA 1953, No 141).

Original application by Haskell L. Nichols, as a taxpayer, against members of the State Administrative Board and members of the Mackinac Bridge Authority for writ of prohibition staying all proceedings in connection with bond issue to finance construction of bridge. Submitted December 29, 1953. (Calendar No. 46,051.) Writ denied and case dismissed January 22, 1954.

*Haskell L. Nichols, in propria persona,* for petitioner.

*Frank G. Millard,* Attorney General, and *Edmund E. Shepherd,* Solicitor General, for defendant members of State Administrative Board and for defendant members of Mackinac Bridge Authority.

BUTZEL, C. J.   Haskell L. Nichols, as petitioner, seeks a writ of prohibition and a stay of all proceedings to prevent the consummation of the sale and delivery of bonds issued by the Mackinac Bridge Authority to pay for the cost of a bridge to span the Straits of Mackinac and connect the highway system of the southern and the northern peninsulas of the State of Michigan. Such cost is to include the bridge approaches, paving, toll house, and all other incidentals. Petitioner attacks the validity of the issuance and sale of revenue bonds amounting to $99,-800,000 and consisting of 2 series: series A in the principal sum of $79,800,000, with a priority of lien of payment over series B in the principal amount of $20,000,000. Petitioner claims that under article 10,

§ 10, of the 1908 Constitution of the State of Michigan, the State could not, without a vote by the people, contract a debt in excess of $50,000,000 for improvement of highways and pledge its credit and issue bonds therefor. However, the issuance and sale of the revenue bonds by the Mackinac Bridge Authority and the building of the bridge are provided for by PA 1952, No 214, as amended by PA 1953, No 141 (CL 1948, § 254.311 *et seq.* [Stat Ann 1953 Cum Supp § 9.1361(1) *et seq.*]), which clearly and unequivocally states that the bonds are revenue bonds which, with interest, are to be paid solely from the revenues of the bridge authority, or from refunding bonds, if any are thereafter issued, and that such revenue bonds do not constitute an indebtedness of the State of Michigan. It is again so stated, as required by the act, on the face of the bonds that have been issued and are about to be delivered. The bonds have been sold prior to December 31, 1953. The delivery of the bonds would have been completed and the purchase price would have been paid had this suit not been instituted. It has been definitely settled that revenue bonds issued by a State agency for a public improvement do not constitute an indebtedness of the State within the meaning of the constitutional provision. *Attorney General, ex rel. Eaves,* v. *State Bridge Commission,* 277 Mich 373, and cases therein cited.

Petitioner further claims that inasmuch as the Mackinac Bridge Authority is an entity and State agency the bonds become general obligation bonds, possibly on the theory that the principal is liable for the acts of its agent. Petitioner overlooks the fact that the statute and the bonds issued thereunder distinctly state that these are revenue bonds and not general obligation bonds of the State.

Petitioner further calls attention to the provision in PA 1953, No 141, *supra,* amending PA 1952, No

214, *supra,* providing that if the bonds are sold prior to December 31, 1953, there shall be appropriated out of the funds of the State highway department, derived from taxes imposed on gasoline and motor fuels and motor vehicles registered in the State, a sum in each fiscal year sufficient to pay for the operation, repair and maintenance of the bridge but not in excess of $417,000 during any fiscal year.  It is admitted that the bridge will be part of the highway system of the State of Michigan, the same as the ferries now operating across the Straits of Mackinac have been considered.  The annual loss from the operation of the ferries across the Straits of Mackinac has averaged over $500,000 a year during the past 5 years, according to the printed reports on file in the office of the auditor general.  Act No 141, *supra,* further provides that when the bonds have been paid off, the tolls for the use of the bridge shall continue until the highway department has been repaid all sums that it has expended for the maintenance, operation and repairs of the bridge.

Petitioner claims that the obligation to appropriate an amount not in excess of $417,000 a year is a legislative act and that future legislatures cannot be bound thereby, but he overlooks the fact that in accordance with PA 1953, No 141, the payment of a maximum of $417,000 for a fiscal year is made part of a contract with the bondholders.

In *State Highway Commissioner* v. *Detroit City Controller,* 331 Mich 337, we held valid an irrevocable pledge of earmarked funds of the State highway department to be used to pay the principal and interest on bonds.  That case applied the "special fund" doctrine and held that the pledge of such special funds did not constitute indebtedness within the meaning of article 10, §§ 10 and 11, of the 1908 Michigan Constitution.  In regard to petitioner's present attack on the validity of the proposed appro-

priation as a contract with the bondholders and subject to the impairment of obligation of contracts, article 1, § 10, of the United States Constitution and article 2, § 9, of the 1908 Constitution of the State of Michigan, our decision in *State Highway Commissioner* v. *Detroit City Controller, supra,* is controlling. We need not repeat at great length what we have so recently stated.

In that case we cited with approval *Gruen* v. *State Tax Commission,* 35 Wash2d 1 (211 P2d 651), wherein it was claimed that an excise tax was not binding on future legislatures because one legislature could not abridge the right of future legislatures to repeal or amend laws. The court, however, noted an exception in the following language (54):

"The principal function of a legislative body is not to make contracts but to make laws which declare the policy of the State and are subject to repeal when a subsequent legislature shall determine to alter that policy. Nevertheless, it is established that a legislative enactment may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the State or its subdivisions within the protection of article 1, § 10. If the people's representatives deem it in the public interest they may adopt a policy of contracting in respect of public business for a term longer than the life of the current session of the legislature."

We also stated in *State Highway Commissioner* v. *Detroit City Controller, supra,* at page 352:

"It is not disputed that when the bonds are issued a contract will be made between the bondholders and the issuing authorities, and that the contract will include the provisions of all relevant existing laws.

" 'It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to and

incorporated in its terms.' *Von Hoffman* v. *City of Quincy,* 71 US (4 Wall) 535 (18 L ed 403).

"See *Hammond* v. *Place,* 116 Mich 628 (72 Am St Rep 543); *City of Pontiac* v. *Simonton,* 271 Mich 647. Thus the contract will include those acts which authorize the collection of taxes for the State highway fund."

We could further elaborate on the various questions that petitioner has raised. We cannot overlook the fact, however, that he brings this suit solely as a taxpayer and as a user of the State highways and in no other capacity. As such he has no standing in court in his attempt to enjoin the proceedings by the defendants. This Court in a very recent case, *Menendez* v. *City of Detroit,* 337 Mich 476, stated as follows:

"In each of these cases it is clearly recognized that prerequisite to a taxpayer's right to maintain a suit of this character against a unit of government is the threat that he will sustain substantial injury or suffer loss or damage as a taxpayer, through increased taxation and the consequences thereof. This is uniformly true of all the Michigan cases considering this subject."

This governs the instant case.

The petition for writ of prohibition is denied and the case is dismissed. No costs, a public question being involved.

CARR, BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.