**STEPHENS COUNTY v. J. N. McCAMMON, Inc.**

No. 1457—5692.

Commission of Appeals of Texas, Section A.

June 10, 1931.

T. B. Ridgell, Lyndsay D. Hawkins, and W. J. Arrington, all of Breckenridge, for appellant.

Goggans & Allison, of Breckenridge, for appellee.

SHARP, J.

The Honorable Court of Civil Appeals for the Eleventh Judicial District submits to the Supreme Court the following certified questions:

"In this cause the appellee, J. N. McCammon, Inc., plaintiff below, sued the appellant,

Stephens County, defendant below, for damages growing out of the alleged breach of a contract, by the terms of which it is alleged the plaintiff was employed by the commissioners' court as an architect to prepare plans and specifications for, and to supervise the proper construction of, a combination courthouse and jail in said county. The plaintiff recovered a judgment for the damages alleged, and in the original opinion by this court, of date March 21st, 1930, we reversed the cause upon the sole point that the trial court should have permitted the defendant, Stephens County, to withdraw certain pleadings and urge a plea in abatement, based upon the contention that the plaintiff, appellee here, had failed to pay its franchise tax, and was, therefore, without authority to institute and maintain the suit in the courts of this state. There is attached hereto and made a part hereof this court's original opinion reversing the judgment of the trial court.

"The cause is now pending in this court upon motion for rehearing by the appellee, and that motion for rehearing is accompanied by a certificate from the Secretary of State, showing that the appellant, a corporation, since the rendition of our original opinion, has paid its franchise tax, and by reason thereof had its right to do business in Texas revived as per the certificate of the Secretary of State, which is as follows:

" 'The State of Texas

" 'Department of State

" 'I, Jane Y. McCallum, Secretary of State of the State of Texas, hereby certify that J. N. McCammon, Inc., a domestic corporation of Dallas, Texas, has this day paid all franchise taxes and penalties due by it to the State of Texas from May 1, 1927, to May 1, 1931, amounting to $68.50 and by reason thereof its right to do business this day been revived and notation to that effect has been entered on the ledger account of such corporation.

" '[Seal.]

" 'In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in the City of Austin, this 1st day of April, A. D., 1930.

" 'Jane Y. McCallum, Secretary of State.'

"In passing upon this motion for rehearing we are, therefore, presented with the question of whether we have the authority to act upon the information contained in the certificate, or must look only to the record proper as brought to this court. Of course, the fact evidenced by the certificate did not exist at the time of the trial of the lawsuit in the court below, nor at the time this court rendered its original opinion. The certificate appears for the first time in this court attached as an exhibit to the appellee's motion for rehearing. This statement is made in view of the following question to be propounded, viz.:

"1. Can this court act upon the information contained in said certificate and by reason thereof regard as moot the question arising from the failure of said corporation to pay its franchise tax, and thereupon be under the duty or have the authority to pass to a consideration of the additional assignments upon which the appeal is predicated?

"As a basis for the other questions this court deems it necessary to propound to the Supreme Court, the following additional statement of the record in this cause is made. The appellee, J. N. McCammon, Inc., brought this suit against Stephens County, alleging that on September 22nd, 1924, the county, acting through its commissioners' court, contracted with the Mid-West Company, Inc., a Texas corporation which thereafter merely changed its name to J. N. McCammon & Co., Inc., whereby it was agreed that the Mid-West Co., Inc., would, for a consideration, perform for the county certain architectural work and services pertaining to the making and furnishing of plans and specifications for a courthouse and jail to be erected in that county, and to supervise the work or construction thereof. This contract is found on page 77 et seq. of the statement of facts, and is here referred to and made a part of this certificate.

"The stockholders of the Mid-West Co., Inc., were J. N. McCammon, a professional architect, A. D. McCammon, his wife, and S. J. McFarland, a banker. At a meeting of said stockholders on June 29th, 1925, the name of the corporation was changed to J. N. McCammon & Co., Inc., the stockholders remaining the same and the charter being unchanged, except as to its name. The contract was signed by the contracting parties in the following manner:

" 'County of Stephens,
" 'By E. F. Ritchey, County Judge,
" 'H. B. Downing
" 'W. I. Hunt
" 'J. W. Horton
" 'S. A. Reynolds
" 'The Mid-West Company, Inc.,
" 'By J. N. McCammon, President.'

"The first article of the contract is as follows:

" 'Article 1. The architect's services. The architect's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings; the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping of accounts, the general administration of the business and supervision of the work.'

"This provision of the contract is here inserted, because it especially reflects the na-

ture of the services which the county sought and which Mid-West Company, Inc., and its successor undertook to perform. But it is desired that each provision of the contract bearing upon the questions propounded be considered in this connection, since the contract as a whole has been made a part hereof. Further, the plaintiff in his petition sought the recovery of the sum of $21,500.00 and, less some credits sought and allowed, recovered a judgment for the sum of $18,500.00, with 6 per cent interest from its date.

"The purpose for which the appellant corporation was formed is to be found in subdivision 45 of article 1302, R. S. 1925, and reads as follows:

"'The purpose for which private corporations may be formed are: * * * 45. To design, purchase or sell, steel and iron and other metal products, and the manufacture of any or of all such products, and to design, sell, construct and erect engineering and architecture (architectural) structures, and to contract for the construction and erection of such structures.'

"An architect's work being professional in its nature, and subdivision 45 above embracing no express authority to a corporation to perform the functions 'the general administration of the business and supervision of the work' stipulated for in article 1 above, and as contemplated by the contract as a whole; and since article 2368, R. S. 1925, provides that: 'No commissioners' court shall make a contract calling for or requiring the expenditure or payment of $2000.00 or more out of any fund or funds of any county * * '* without first submitting such proposed contract to competitive bids'; and since the contract was not awarded on competitive bids, we find it necessary to certify for your decision the following additional questions:

"2. Had Stephens County the authority in law to enter into the foregoing contract with the Mid-West Co., Inc., a corporation, without first submitting the proposed contract to competitive bids?

"3. In view of that provision of the contract (Art. 1) calling for 'the general administration of the business and supervision of the work' by the corporation, was the contract ultra vires as to the Mid-West Co., Inc., and for that reason nonenforcible as to Stephens County at the date of its alleged breach?

"The members of this court entertaining a diversity of opinion upon the questions presented, it is deemed proper and expedient to certify to Your Honorable Court the questions hereinbefore noted, and answers to them are respectfully requested."

As shown by the certificate, the original opinion of the Court of Civil Appeals is attached thereto and made a part thereof. We quote from that opinion as follows: "At the time the alleged contract was entered into and at the time of the alleged breach thereof, plaintiff corporation was in good standing with the right to transact business contemplated by its charter."

It is contended that by reason of article 7091, R. S. 1925, appellee having failed to pay its franchise tax, it was precluded from maintaining this suit in any of the courts of this state.

■ It appears from the opinion that the corporation has not been dissolved; that only its right to do business in the state was suspended by the failure to pay the franchise tax. The corporation, not having been dissolved, is still in all respects a legal entity. This suit arose over the breach of contract made while it was in good standing and its right to do business in this state unquestioned. It is now seeking to recover its right caused from the breach of a contract occurring while it had the right to do business and legally acquired before the secretary of state noted the forfeiture.

In the case of Federal Crude Oil Co. v. Yount-Lee Oil Co. (Tex. Com. App.) 35 S.W. (2d) 111, 114, which involves a similar question, in an opinion by Judge Ryan, it is said:

"The act of the secretary of state cannot be given the effect of closing the courts to the corporation and precluding a recovery by it of property it had already and lawfully acquired. Texas Land & Mortgage Co. v. Worsham, 76 Tex. 556, 13 S. W. 384; Deveny v. Success Co. (Tex. Civ. App.) 228 S. W. 295; Kingman Implement Co. v. Borders (Tex. Civ. App.) 156 S. W. 614.

"A corporation's right to carry on its business may by law properly be terminated for failure to pay a franchise tax, but the cessation of its right to do business does not work a forfeiture of its property and denude it of the right to protect the same. It follows as a necessary corollary that it has the right to so protect itself and its property by judicial remedy. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556; Hendrickson v. Apperson, 245 U. S. 105, 38 S. Ct. 44, 62 L. Ed. 178; Turnpike Co. v. Sandford, 164 U. S. 578, 17 S. Ct. 198, 41 L. Ed. 560; Osborn v. Nicholson, 13 Wall. 654, 20 L. Ed. 689.

"So, inasmuch as the corporation's rights had become legally vested, before the termination of its right to do business for failure to pay a franchise tax, that termination did not destroy or impair its ownership of the property, nor could it deprive the corporation of the right to enforce its ownership in the courts. 1 Cooley on Constitutional Limitations (8th Ed.) pp. 592, 593."

Section 18 of article 16 of the Constitution of Texas, in part, reads: "The rights of property and of action, which have been acquired under the constitution and the laws of the

republic and state, shall not be divested." See section 16 of article 1 of the Constitution.

■ It seems to be a well-settled rule, supported by both state and federal decisions, that rights, necessary to corporate object and vested under charter, cannot be impaired.

In the case of Pearsall v. Great Northern Ry. Co., 161 U. S. 646, 16 S. Ct. 705, 713, 40 L. Ed. 838, the Supreme Court of the United States, in discussing the vested rights of a corporation chartered under existing laws, says: "A 'vested right' is defined by Fearne, in his work upon Contingent Remainders, as 'an immediate, fixed right of present or future enjoyment;' and by Chancellor Kent as 'an immediate right of present enjoyment, or a present, fixed right of future enjoyment.' 4 Kent, Comm. 202. It is said by Mr. Justice Cooley that 'rights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.' Const. Law, 332." See New York Electric Lines v. Empire City Subway Co., 235 U. S. 179, 35 S. Ct. 72, 59 L. Ed. 184.

Chief Justice Phillips, speaking for our Supreme Court, in the case of Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, 560, says: "A vested right of action given by the principles of the common law is a property right, and is protected by the Constitution as is other property."

Judge Stayton, in the case of Mellinger v. City of Houston, 68 Tex. 37, 3 S. W. 249, 253, in discussing the rights based upon contracts fully protected by the Constitution of the State of Texas, as well as the Constitution of the United States, says: "A right has been well defined to be a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized or secured by law."

In Cooley's Constitutional Limitations (8th Ed.) vol. 1, p. 593, it is said: "And where a statute does not leave a party a substantial remedy according to the course of justice as it existed at the time the contract was made, but shows upon its face an intention to clog, hamper, or embarrass the proceedings to enforce the remedy, so as to destroy it entirely, and thus impair the contract so far as it is in the power of the legislature to do it, such statute cannot be regarded as a mere regulation of the remedy, but is void, because a substantial denial of right."

In the construction of statutes the correct rule is clearly stated in 36 Cyc. § 2, pp. 1106, 1107, and 1108, as follows: "The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the legislature. This intention, however, must be the intention as expressed in the statute, and where the meaning of the language used is plain, it must be given effect by the courts, or they would be assuming legislative authority. But where the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning. If the intention of the legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law."

In 25 R. C. L. § 243, pp. 1000 and 1001, a familiar rule is stated as follows: "Where an act is fairly susceptible of two constructions, one of which will uphold the validity of the act while the other will render it unconstitutional, the one which will sustain the constitutionality of the law must be adopted."

■■ Applying the foregoing rules to the facts of this case, it is unquestioned that the Legislature had the right to require the corporation to pay a franchise tax before it could transact business in this state. That the Legislature had the right to provide that failure to pay the franchise tax as required by law authorized the secretary of state to enter upon the margin of the record in his office relating to such corporations, the words "right to do business forfeited" is not doubted. It is equally true that the Legislature is authorized to provide that any corporation, whose right to do business is forfeited and has not been revived, as provided for by law, shall not further transact business in this state or use the courts in the furtherance of its ends after said forfeiture.

■ In consonance with the foregoing rules, we conclude that the Legislature did not intend to impair the rights conferred upon appellee during the time its right to do business was unquestioned under the laws of this state or to impair any rights that accrued during that time.

However, we will not evade the issue. If the Legislature intended by the enactment of article 7091 to impair or abrogate the vested rights of the corporation accrued while it was in good standing and before its right to do business in this state was forfeited and prevent it from maintaining a suit in the courts of this state for the protection of those vested rights, it would violate the provisions of the Constitution and the decisions of this state, and would, therefore, be void.

In view of the fact that the appellee had the authority under the rule herein stated to maintain its suit in the courts, independent of the revival by the secretary of state for it to do business, as provided for by statute, ques-

tion No. 1 becomes immaterial, and it is not necessary to answer it.

█ This brings us to the consideration of question No. 2. The record shows that Stephens county intended to erect and fully equip the jail building together with necessary courthouse improvements.

The commissioners' court of that county employed appellee as an architect to prepare plans and specifications for and to supervise the proper construction of a combination courthouse and jail in said county. A contract dated September 22, 1924, was entered into by Stephens county and the Mid-West Company, Inc.

It is earnestly contended that by reason of article 2368, R. S. 1925, which provides that, "No commissioners' court shall make a contract calling for or requiring the expenditure or payment of two thousand dollars or more out of any fund or funds of any county * * * without first submitting such proposed contract to competitive bids," and since the contract was not awarded on competitive bids, it is void and unenforceable. The contract called for skill and experience on the part of the appellees. They were required to prepare suitable plans for the work to be done in the construction of a jail and perhaps a new courthouse. The county was vitally interested in procuring the services of a skilled and experienced person or concern to draw up the necessary plans and supervise the work while going on. To hold that contracts for this kind of work must be let to the lowest bidder would inevitably result in the county being placed in a position which would require it to accept the services of incompetent persons. Naturally, one who has no skill, experience, or technical knowledge, could underbid one who possesses the skill, technical knowledge, and experience, to perform this kind of service. In other words, to construe the statute contended for would place a premium upon incompetency and produce an unfortunate situation. To illustrate, could it be seriously contended that if a county desired the services of a skilled and competent attorney to represent the county in some important piece of litigation, involving a large sum of money, that the county should, before letting the contract, submit it to competitive bids, and then be required to hire the person making the lowest bid therefor? We think not. To do and perform the work for which appellee was employed required technical skill and experience of a high degree, and it is plain that the Legislature never intended that such services should be awarded upon competitive bids. We rest the conclusions reached upon this question upon the following decisions: Gulf Bitulithic Co. v. Nueces County (Tex. Com. App.) 11 S.W.(2d) 305; Hunter v. Whiteaker (Tex. Civ. App.) 230 S. W. 1096 (W. denied); Tackett v. Middleton (Tex. Com. App.) 280 S. W. 563, 44 A. L. R. 1143; City of Houston v. Glover, 40 Tex. Civ. App. 177, 89 S. W. 425, 426.

We answer question No. 2: "Yes."

Appellee was incorporated and chartered under article 1302, R. S., subdivision 45 thereof, which reads as follows:

"The purposes for which private corporations may be formed are: * * *

"45. To design, purchase and sell steel and iron and other metal products and the manufacture of any or all of such products, and to design, sell, construct and erect engineering and architecture [architectural] structures, and to contract for the construction and erection of such structures."

Article 1320, R. S. 1925 says:

"Every private corporation as such has power: * * *

"7. To enter into any obligation or contract essential to the transaction of its authorized business."

█ The statute under which appellee was incorporated expressly authorizes a corporation to design buildings. The designing of a building is an architectural service. In R. C. L. vol. 2, p. 399, an architect is defined as follows: "An architect is one whose occupation it is to form or devise plans and designs and to draw up specifications for buildings or structures, and to superintend their construction."

█ It appears that Stephens county was in need of an architect and made a contract with appellee to perform certain services. Appellee was authorized to design and contract for the construction and erection of buildings. All of the things which it contracted to do in the contract involved in this suit were an integral part of the designing, contracting for the construction, and constructing buildings. A part of the work of constructing the buildings is the supervision of such construction and the administration of the business thereof.

█ A corporation in the transaction of its business has the same latitude as the individual in the same character of business, in those things that are essential to the successful operation of that particular business.

█ The doctrine of ultra vires ought to be reasonably understood and applied, and whatever may fairly be regarded as incidental to, or consequential upon, those things which a corporation has been authorized to do, ought not, unless expressly prohibited, be held by judicial construction to be ultra vires. Texas Fidelity & Bonding Co. v. General Bonding Co. (Tex. Com. App.) 216 S. W. 144; Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850; North-

side Ry. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778; Jacksonville Co. v. Hooper, 160 U. S. 514, 16 S. Ct. 379, 40 L. Ed. 515.

It would be inconsistent and illogical to say that a concern could be incorporated under the law for certain purposes and be authorized to make contracts within the scope of its power essential to the successful operation of its particular business, and then hold that the contract so made was not binding or enforcible upon the theory that it was ultra vires. We see no sound reason for so holding.

We answer question No. 3: "No."

We therefore recommend that the foregoing questions be answered as indicated.

CURETON, C. J.

The opinion of the Commission of Appeals answering the certified questions is adopted, and ordered certified.