Milton A. HELLMAN, Appellant,

v.

ST. LOUIS COUNTY, Missouri; Luman F. Matthews, Supervisor, St. Louis County, Missouri; Harold D. Carey, James A. Singer, Frank L. Martini, E. Gordon Davis, Tom Dunne, James H. J. McNary, and Maurice Abramson, Members of the County Council, St. Louis County, Missouri; Philip G. Deuser, Assessor, St. Louis County, Missouri; Frank J. Burkamp, Treasurer, St. Louis County, Missouri; Clarence H. Hackmann, Auditor, St. Louis County, Missouri; Roy Wenzlick and Susan N. Wenzlick, co-partners, d/b/a Roy Wenzlick & Company; and Doane Agricultural Service, Inc., a Corporation, Respondents.

No. 45842.

Supreme Court of Missouri, Division No. 1.

June 10, 1957.

appraisal companies for the appraisal of certain real estate in the county and the rendition of other services in connection with the ultimate assessment of such real estate for purposes of taxation. The trial court found the issues in favor of defendants and entered judgment accordingly, from which plaintiff has appealed.

St. Louis County is a county of the first class, operating under a Home Rule Charter adopted by the voters pursuant to the provisions of Article VI, § 18, of the Constitution of Missouri, V.A.M.S. In addition to the County, the following are also made parties defendant: the County Supervisor, the members of the County Council, the Assessor, the Treasurer, the Auditor, the co-partners composing one of the aforesaid appraisal companies doing business as "Roy Wenzlick & Company", and the other appraisal company, Doane Agricultural Service, Inc., a corporation. (For convenience, Roy Wenzlick & Company will be herein referred to as "Wenzlick" and Doane Agricultural Company, Inc., as "Doane".)

In June, 1955, a Special Committee on Assessment of Property for Tax Purposes, duly appointed by the County Council, reported in part that: (1) "A parcel-by-parcel revaluation by experts in this field is the only way we can provide for the orderly assessment and collection of future taxes in St. Louis County." (2) "We have been impressed by the fact that it is not possible to purchase a professional revaluation of real estate in the same manner that we would purchase standardized items of supplies * * *. The services sought require the highest degree of professional skill based upon training and experience." (3) "These firms (Wenzlick and Doane), which make professional revaluations throughout the country, maintain home offices locally. Each has special knowledge of and experience in this area. Each has a national reputation for professional ability and integrity, the value of which cannot be calculated."

Robert S. Allen, St. Louis, for plaintiff-appellant.

William B. Kline, St. Louis County Counseler, C. Wheeler Detjen, John F. Molloy, Asst. County Counselors, Clayton, for defendants-respondents.

HOLLINGSWORTH, Presiding Judge.

Plaintiff, a resident-taxpayer of St. Louis County, sued to enjoin the enforcement of allegedly illegal contracts separately entered into between St. Louis County and two

On March 7, 1956, by resolution No. 140, in which reference was made to the report of the special committee, the Assessor and County Supervisor were authorized to execute the contracts in question "pursuant to the provisions of Section 17.24 of the Administrative Code of St. Louis County as contained in St. Louis County Ordinance No. 713, 1955, * * *." On March 8, 1956, without advertisement for bids, the contracts were duly executed.

The provisions of both contracts are substantially the same, except as to the real estate to be appraised and the compensation to be paid each of the appraisal companies. Wenzlick agreed to appraise all of the taxable land and improvements located within five designated school districts in the County and Doane agreed to appraise all of the taxable land and improvements within nine other designated school districts in the county. Each contract also required the appraisal company therein named to prepare and deliver to the Assessor certain manuals of procedure, field record cards, land value maps, indexing cards, identifying classification and other detailed information and services, and that the work be completed by March 1, 1957. In consideration of the aforesaid services, the county agreed to pay Wenzlick the sum of $185,225 and Doane the sum of $60,450.

Each contract also granted the county two options to employ the appraisal company therein named for appraisal of the property in certain other school districts of the county for each of the years of 1957 and 1958 and for the rendition of services similar to those set forth in the contracts for the year of 1956. If the county exercised "Option 1" of the Wenzlick contract for the year of 1957, it became obligated to pay Wenzlick $273,609; if it exercised "Option 2" for the year 1958, it became obligated to pay Wenzlick $169,416. If the county exercised "Option 1" of the Doane contract for the year 1957, it became obligated to pay Doane $73,150; if it exercised "Option 2" for the year 1958, it became obligated to pay Doane $73,150.

Plaintiff contends, as he contended in the trial court, the contracts are unenforceable on grounds: (1) the county had no authority to enter into them; (2) each contract, in fact, constitutes a three-year plan of reappraisal and is violative of Article VI, § 26(a), of the Constitution and of the statutes requiring an annual assessment of all of the taxable property within the county; and (3) each contract involves an expenditure of more than $500 and was not advertised as required by Section 50.660 RSMo 1949, V.A.M.S. (All statutory references herein are to RSMo 1949, V.A. M.S.)

The Charter of St. Louis County (Art. III, § 22 [7]) authorizes the Council, by ordinance: "To provide for the assessment, levy, equalization and collection of all taxes now or hereafter authorized by the Constitution or by law and to prescribe a method or system to facilitate the assessment, calculation, extension and collection of taxes including the design of the books and forms and the purchase and installation of necessary mechanical devices."

Ordinance 713, enacted pursuant to the above charter provision, established a Division of Assessment, defined the powers and duties of the Assessor and prescribed "a method to facilitate the scientific and uniform assessment of property for taxation."

The following sections thereof are pertinent:

Section 17.11: "The Assessor shall be the head and shall have general supervision of the Division of Assessment. The Assessor shall perform all duties required of a Division Head by the St. Louis County Charter, and by law, and shall have, in addition to the powers and duties prescribed by law, the powers and duties prescribed by this Ordinance."

Sections 17.13 through 17.23 provide a detailed method for the uniform assessment of the taxable property in the County.

Section 17.24 provides: "When the assessor shall have determined that it is necessary to conduct a revaluation of all taxable property, in order to insure uniformity of assessments within St. Louis County, he may request the County Supervisor to employ, by and with the approval of the County Council, experts and consultants, to assist the assessor in such revaluation program."

Section 17.25 provides: "The assessment system set forth in this Ordinance shall be followed by the Assessor assessing all land and buildings; provided, however, that if, in his judgment, any modifications are necessary in order to arrive at the true value, in money, of such property, he shall be authorized to make such modification."

At the trial, August F. Rumping, chief deputy assessor of St. Louis County, called as a witness in behalf of plaintiff, testified: The assessor's office would use every portion of the information furnished by the appraisal companies that the office sees fit for the purpose of making a uniform assessment. Mr. Rumping did not know whether the assessor contemplated using the valuation of the appraisers as they were reported each year or whether he would wait until all of the appraisals were made. He said that the information furnished by the appraisers "will be used in one way or another in making a uniform assessment"; that the assessor would use his own judgment as to the assessments made on the appraisals, using them for his guidance along with any other factors that he may feel are essential "to determine the valuation in his own judgment"; and that the appraisals are not binding upon him.

Plaintiff's contention that St. Louis County had no authority to enter into the contracts in issue is predicated upon the contention that both the statutes of Missouri and the charter of St. Louis County require that the property of the county be assessed for state and county purposes by the assessor of the county only

and that the statutes and the charter do not (and the charter lawfully could not) authorize the county by ordinance or otherwise to employ experts to make the appraisals set forth in the contracts for the reason that they constitute an unlawful delegation of the powers enjoined by law solely upon the assessor.

In support of his contention with respect to the statutes, he cites numerous sections relating to the duties of county assessors, generally illustrative of which are Section 137.115, requiring the assessor or his deputies to make a list of all taxable property in his county and to assess the same at its true value, etc., and Section 53.030, requiring each county assessor to take an oath to assess all of such property at what he believes to be the actual cash value.

With respect to the powers and duties of the assessor, as fixed and declared by the County Charter, plaintiff's argument runs thus: He first directs our attention to the three following provisions of the Charter: (a) Article I, Section 2, declares that St. Louis County "shall have all the powers now or hereafter vested by the Constitution and laws of Missouri in county courts, county offices, counties of the first class, * * * and all the powers provided in this Charter, and all other powers that are necessarily implied under the powers so granted." (b) Article II, Section 3, declares and constitutes the assessor an "elective county officer". (c) Article II, Section 4, provides that each elective county officer "shall have all the powers and perform all the duties provided by law, except as otherwise provided by this charter". Plaintiff then says that at "no place in the Charter are the duties of the assessor specifically spelled out or set forth to be any different than his duties" placed upon him by the Constitution and statutes of Missouri, and that, therefore, his duties and powers in St. Louis County are limited to the precise extent declared by such statutes. In the same connection, plaintiff further contends that the charter powers of St. Louis County are enumerated and limit-

ed by Article VI, Section 18, of the Constitution and that even if the county charter did purport to authorize the enactment of Ordinance No. 713, and more specifically the enactment of Section 17.24 thereof, which permits the employment of experts and consultants to assist the assessor in the revaluation program therein authorized, there is yet no authority for these contracts, because they do not contemplate mere assistance but rather do they contemplate the relinquishment by the assessor of his duties to the appraisal companies therein named; and that they therefore constitute an invalid delegation of the powers of the office of the assessor.

■ The answer to the latter contention is obvious: The assumption that the contracts constitute a delegation of any of the powers of the assessor is contrary to every fact and circumstance in evidence. Neither the ordinance (No. 713) nor the contracts purport to authorize or imply that any of the duties placed both by the statutes and the charter upon the assessor are to be assumed or exercised by the appraisal companies. The testimony of Mr. Rumping, introduced by plaintiff, was to the effect the assessor would make such use of the appraisals along with any other factors he deemed essential "to determine the valuation in his own judgment". So it is, that the whole of the evidence is to the effect that the contracts were made simply for the salutary purpose of aiding the assessor in determining the true value of, and thereby more accurately to assess, the taxable property of the county in accordance with his statutory duties. They are not invalid on that score.

■ The next question is: Did the County have the power to contract for the services described in the contracts? It is, of course, true, as plaintiff contends, that county courts are not general agents of the counties or the state and that they have only such power to contract as is expressly granted them by law or is necessarily implied. Section 432.070; King v. Maries County, 297 Mo. 488, 249 S.W. 418; Hillside Securities Co. v. Minter, 300 Mo. 380, 254 S.W. 188; State ex rel. Cole v. Matthews, Mo., 274 S.W.2d 286; State on Inf. of Dalton ex rel. Shepley v. Gamble, Mo., 280 S.W.2d 656.

Plaintiff strongly relies upon the King case, supra. In that case [297 Mo. 488, 249 S.W. 419], King an abstracter of titles, was employed by the Maries County Court "to run down the title and furnish a list of all names of owners and a true description of all lands embraced in back tax bills * * *" to facilitate suits to recover delinquent taxes. This court, on appeal, reviewed the statutes relating to "back taxes" and the collection thereof and held that the county was without authority to enter into the contract. While the opinion in that case expounds the principle which plaintiff contends is applicable in the instant case, it is not, for the reasons hereinafter stated, decisive of the question of the authority of St. Louis County to enter into contracts directed toward the procurement of an accurate and uniform assessed valuation of its taxable property.

More directly bearing upon the precise question here involved is Section 137.230 of the statutes, the pertinent portion of which reads: " * * * provided, that in counties having a population of over forty thousand the county court may, in addition to the foregoing provisions for securing a full and accurate assessment of all property therein liable to taxation, or in lieu thereof, by order entered of record, adopt for the whole or any designated part of such county any other suitable and efficient means or method to the same end, whether by procuring maps, plats or abstracts of titles of the lands in such county or designated part thereof or otherwise, and may require the assessor, or any other officer, agent or employee of the county to carry out the same, and may provide the means for paying therefor out of the county treasury."

That provision was considered at length by the Springfield Court of Appeals in State ex rel. and to use of Tadlock v. Mooneyham, 212 Mo.App. 573, 253 S.W. 1098, and was held to be an express grant of power for the purposes therein stated. It seems clearly to authorize contracts such as are here involved. But, in any event, it definitely amounts to a declaration of public policy that the county courts of counties of more than 40,000 population may adopt suitable and efficient means or agencies to procure an accurate assessment of all or any portion of taxable property in their counties and pay for such services out of the county treasury. We know of no constitutional or statutory provision that a charter county must exercise the powers and duties enjoined upon it by the constitution in precisely the same manner as prescribed by the general law of the state. The case of State on Inf. of Dalton ex rel. Shepley v. Gamble, Mo., 280 S.W.2d 656, 660 [6, 7], states that: " * * * provision must be made by the charter county for the performance of the duties enjoined upon sheriffs by our statutes, but the county has the choice as to what officer or agency will be designated to perform the duties." Little purpose would be served in authorizing the adoption of charters of local self-government in the more populous counties if such counties could not adopt reasonable means and methods of carrying out their governmental functions in such a manner as to meet the peculiar needs of such counties. It is common knowledge that the problems of the uniform assessment of the taxable property of St. Louis County are manifold and unique.

Article VI, § 18(b) of the Constitution, in authorizing the adoption of home rule charters, directs that the charter "shall provide * * * for the exercise of all powers and duties of counties and county officers prescribed by the constitution and laws of the state." Such a declaration carries with it an implied grant of such powers as are reasonably necessary to the exercise of the powers granted and are not contrary to the public policy of the state. State ex rel. Spink v. Kemp, Mo., 283 S.W.2d 502, 514 [4–6]. No suggestion is made that an effective exercise of the powers and duties of the assessor of St. Louis County does not reasonably require the employment of experts as contemplated by the contracts in issue. Certainly, the adoption of such a method is not contrary to the provisions of the statute (§ 137.230) quoted supra. Article III, § 22, of the charter (hereinabove quoted) authorized the adoption of Ordinance 713. Sections 17.24 and 17.25 of the ordinance expressly authorized the execution of contracts such as those in issue. The chain of the power of the county to so contract is thus complete. We hold the contracts valid as against the contentions hereinabove discussed.

We are also convinced that the contracts are not violative of Article VI, § 26(a) of the Constitution, which denies to the counties and other subdivisions of the state the power to "become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances, * * *", etc. Plaintiff, by a process of reasoning that will not withstand close scrutiny, says that the contracts are sufficiently ambiguous to permit consideration of the report of the Special Committee above referred to, which report, on its face, plaintiff says, envisions a "three year or 30 month plan" of revaluation and that "it is ignoring the substance of the transaction to say that this is just a one year contract when one-third of the county is sectionalized for the particular year with options in two subsequent years."

Let us assume that the program of the Special Committee and the desire of the County does *contemplate* a plan that either the extent of the work to be done or the revenues of the county and the limitations of its power to contract under Article VI, § 26(a), of the Constitution may not permit of its completion within one year, yet neither of such possible situations renders

the contracts here in question void. They do not conflict with nor do they seek to evade the constitutional limitations above set forth. Rather do they face up to and evince a feasible and forthright purpose to comply with both the letter and spirit of the Constitution. Mr. Rumping, on that phase of the case, testified:

"Q. Does the Assessor's Office have any plan or contemplation of what they will do as to following through on the completion of this re-appraisal work, if the County does not exercise its option at the end of one year? A. I would say that if a portion of the work was completed and as it was done the formula for doing so will be given to the Assessor and if the plan is made and the option not to renew it, the assessment may follow the same plan.

"Q. Have you any plan contemplated now as to that? A. Not at the present time."

The contracts expressly limit the obligation of the county to one year and there is no suggestion that the indebtedness therein contracted exceeds the income and revenue provided for that year. They do not require that the options be exercised until February 1 of the years of 1957 and 1958, respectively. Hence, each option may or may not become a binding obligation as the then governing body of the county and the available revenues may determine. The cases cited by plaintiff, and especially the case of Sager v. City of Stanberry, 336 Mo. 213, 78 S.W.2d 431, which treats of a contract that sought to evade the constitutional provision, are not in point.

Plaintiff also says that the statutes require that all real properties in St. Louis County be assessed at their true value each year; that it is unlawful to appraise and assess real property pursuant to a three year plan and that, therefore, the contracts are unlawful and void. Obviously, the argument is without merit. The contracts do not in any manner contemplate or direct that the assessor shall not each year to the best of his ability assess all of the taxable property of the county at its true value. They contemplate only that he shall have the benefit of an expertly appraised valuation of each parcel within designated portions of the county in making the assessment of 1957, and that, if the county finds it has funds available and that it is otherwise worthwhile and feasible to furnish him with such assistance in either or both of the ensuing years, it may do so.

■ Finally, plaintiff contends the contracts are illegal because St. Louis County did not advertise the letting of them, as required by the county budget laws, and cites in support of that contention Section 50.660, which, in part, provides: "All contracts and purchases shall be let to the lowest and best bidder after due opportunity for competition, including advertising the proposed letting in a newspaper in the county * * *", etc.

Defendants say that the contracts engage the services of experts in a non-competitive field and are not subject to the provisions of Section 50.660 requiring advertisement for bids before letting. Plaintiff does not challenge defendants' assertion that the appraisal services which the appraisal companies are employed to render do in fact require expert knowledge or that such services can be engaged only on a non-competitive basis. But, he does insist that the services do not relate solely to actual appraisal and that certain of them, such as the furnishing of maps, photographs, manuals, etc., are technical rather than "professional." We think, however, that the technical services to be rendered by the appraisal companies, such as the preparation of forms, etc., are incidental to the main objective of their employment, to wit: the separate appraisal of the real properties within the areas specified in their respective contracts, and that the validity of the contracts under the aforesaid statute should not be made to turn on that point.

The phrasing of the statute denotes its purpose that contracts be awarded "to the

lowest and best bidder after due opportunity for competition". Therefore, if the services here in question are not within the competitive field, then they are beyond the purview of the statute. To nevertheless construe the statute to include noncompetitive services, on the ground that it does not expressly exclude them, would not only preclude counties from engaging the services of practically all of the professions, but would also force them to accept the services of the least qualified "expert" in any specialized field wherein services generally are engaged on a non-competitive basis if his bid were the lowest. We cannot believe its purpose would be served by such a construction. In this connection, we think we should here note that plaintiff does not suggest or intimate that the county was actuated by any motive other than the welfare of the county in letting these contracts without advertising for bids. He frankly says that "he has no quarrel with the laudable motives of the Assessor and County officers of St. Louis County. The need of the reappraisal and reassessment of real estate in St. Louis County is conceded."

In ·Layne-Western Co. v. Buchanan County, Missouri, 85 F.2d 343, 346, the Circuit Court of Appeals of the Eighth Circuit had under consideration the statute above quoted. In that case, the appellant was given the contract because it was the only concern found which would drill the wells, furnish the equipment, install the same, and guarantee the production of water or no pay. Other concerns found would drill the well or furnish the pump, but the commission wanted a single responsibility for the wells and pumps. The court held that the services therein contracted were not shown to be beyond the competitive field, but, in so holding, stated: "The requirement of competitive bidding is always subject to the qualification that the contract must be naturally competitive. A contract for professional services does not for that reason come within the requirements of such a statute. Stephens County

v. [J. N.] McCammon, Inc., Tex.Com.App., 40 S.W.2d 67. The same is true of a contract which is of such character that the contractor is the only person who can enter into it. [Cases cited.]"

The case of Stephens County v. J. N. McCammon, Inc., supra, involved the validity of a contract made with McCammon, an architect, to prepare plans and specifications and supervise the building of a courthouse and jail. Texas has a statute similar to ours. In upholding the contract, the court said, 40 S.W.2d 67, 71: "The county was vitally interested in procuring the services of a skilled and experienced person or concern to draw up the necessary plans and supervise the work while going on. To hold that contracts for this kind of work must be let to the lowest bidder would inevitably result in the county being placed in a position which would require it to accept the services of incompetent persons. Naturally, one who has no skill, experience, or technical knowledge, could underbid one who possesses the skill, technical knowledge, and experience, to perform this kind of service. In other words, to construe the statute contended for would place a premium upon incompetency and produce an unfortunate situation."

In Roper v. Hall, 280 S.W. 289, the Court of Civil Appeals of Texas held that a county's contract hiring an individual to compile data for use in equalizing assessments was not void because not let to the lowest bidder. The services called for in that contract were quite similar to those involved in this case. The court said, 280 S.W. loc.cit. 291–292: "Appellants submitted ample evidence to sustain their contention that such knowledge, skill, and experience were required for the proper performance of said contract, and that such knowledge, skill, and experience were being actually furnished by Pickett in the discharge of his duties thereunder. There was not attempt to discredit or contradict such evidence. Neither was there any attempt to show a subtle or fraudulent purpose on the part of the commissioners' court in incorporating such

recitals in said written contract. This contention of appellees is overruled." See also 20 C.J.S. Counties § 183, p. 1019, footnote entitled "Contracts requiring personal skill or technical learning".

We are convinced that the evidence in this case justified the finding of the trial court that the services involved in the contracts were of such a character as to warrant classifying them as non-competitive, and that the contracts were not violative of Section 50.660 of the statutes.

The judgment is affirmed.

All concur.