

# SUPREME COURT OF MISSOURI
## en banc

MISSOURI BANKERS        )
ASSOCIATION, INC., and      )
JONESBURG STATE BANK,    )
                                    )
                Appellants,        )
                                      )
vs.                                   )      No. SC93848
                                      )
ST. LOUIS COUNTY, MISSOURI,   )
and CHARLIE A. DOOLEY,     )
                                    )
                Respondents.     )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Brenda Stith Loftin, Judge

*Opinion issued November 12, 2014*

Missouri Bankers Association, Inc. and Jonesburg State Bank (hereinafter and collectively, "Bankers") sought a judgment declaring an ordinance that implemented a foreclosure mediation program invalid. This Court holds St. Louis County (hereinafter, "the County") exceeded its charter authority when enacting the ordinance and the ordinance was void *ab initio*. This Court further holds Bankers are not entitled to an award of attorneys' fees pursuant to their Hancock Amendment claim. The circuit court's judgment is reversed, and the case is remanded.[1]

---

[1] This Court transferred this case after an opinion by the Missouri Court of Appeals, Eastern District. Portions of the court of appeals opinion are incorporated without further attribution.

## Factual and Procedural History

In 2012, the St. Louis County Council adopted an ordinance titled the "Mortgage Foreclosure Intervention Code."  The ordinance stated it addressed "the national residential property foreclosure crisis" and the negative impact this national crisis had on the County's property values, tax base, budget, assessments, and collection of real property taxes.  The ordinance recognized that "unsecured and unmaintained properties present a danger to the health, safety and welfare of the public … and as such, constitute a public nuisance."  In response to this nuisance, the ordinance implemented a mediation program requiring lenders to provide residential borrowers an opportunity to mediate prior to foreclosure.

The ordinance mandates the lender provide the homeowner with written notice of the mediation process, the homeowner's right to request mediation, and a notice of foreclosure.  Along with these notices, the lender must pay a nonrefundable fee of $100 to a mediation coordinator who manages and oversees the mediation program.  The mediation coordinator must make at least three attempts to contact the homeowner regarding participation in the mediation program.

If the homeowner chooses to participate in the mediation program, the mediation must be scheduled within sixty days.  The lender must pay an additional $350 fee to the mediation coordinator.  If the parties are able to reach a settlement regarding the foreclosure prior to the mediation, the $350 fee is refunded to the lender.  If the parties are unable to reach a settlement during the mediation conference, the lender is deemed to

have satisfied the ordinance's requirements so long as the lender has made "a good faith effort" to settle the matter.

After satisfying the ordinance's requirements, the mediation coordinator must issue the lender a certificate of compliance attesting the lender has complied with the ordinance and is eligible to record the foreclosure deed without penalty. If the homeowner fails to respond or declines to participate in the mediation program, the lender shall be deemed to have satisfied the ordinance's requirements and will receive a certificate of compliance within one business day. The certificate of compliance must be filed with the county assessor simultaneously with the filing of a conveyance of the foreclosed property with the county recorder of deeds. Failure to obtain and file a certificate of compliance does not prevent the recording of the conveyance; however, the ordinance subjects the lender to criminal prosecution and a fine up to $1,000 for failure to comply.[2]

Bankers filed suit against the County and Charlie A. Dooley, the county executive (hereinafter and collectively, "the County"), seeking a declaratory judgment and injunctive relief. Bankers presented six counts, alleging the ordinance: (1) conflicted with state statutes; (2) violated the Hancock Amendment, Mo. Const. art. X, sec. 22; (3) violated Missouri constitutional taxation provisions; (4) violated Missouri constitutional restrictions on charter county authority; (5) violated Bankers' rights; and (6) violated the

---

[2] Actual compliance with the ordinance constitutes a complete defense for the lender if subsequently prosecuted.

County charter. The circuit court issued a temporary restraining order enjoining the County from enforcing the ordinance. Both parties filed motions for summary judgment.

After reviewing the pleadings, the circuit court dissolved the restraining order and sustained the County's motion for summary judgment. The circuit court held the County possessed the charter authority to enact the ordinance, the ordinance was a valid exercise of the County's police power, and the ordinance was not preempted by state law. The circuit court further found the fees associated with the ordinance did not violate the Hancock Amendment.

Bankers appealed. During the pendency of the appeal at the court of appeals, the legislature enacted a new state mortgage law, section 443.454, RSMo Supp. 2013. This statute, effective August 28, 2013, states:

> The enforcement and servicing of real estate loans secured by mortgage or deed of trust or other security instrument shall be pursuant only to state and federal law and no local law or ordinance may add to, change, delay enforcement, or interfere with any loan agreement, security instrument, mortgage or deed of trust. No local law or ordinance may add, change, or delay any rights or obligations or impose fees or taxes of any kind or require payment of fees to any government contractor related to any real estate loan agreement, mortgage or deed of trust, other security instrument, or affect the enforcement and servicing thereof.

Section 443.454 expressly prohibits local municipalities from enforcing the type of ordinance the County enacted. The court of appeals requested additional briefing discussing the impact of the new legislation on the ordinance's validity. The County conceded there was an express conflict between section 443.454 and the ordinance and stated it would not enforce the ordinance. The County then argued the statute's passage rendered the controversy moot. The court of appeals agreed, dismissed the appeal, and

4

ordered the case be remanded so that the circuit court could vacate the judgment and dismiss the lawsuit.[3] This Court granted transfer.[4] Mo. Const. art. V, sec. 10.

## Mootness

Initially, this Court must address whether this cause is moot due to the enactment of section 443.454.

> A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. When an event occurs which renders a decision unnecessary, the appeal will be dismissed. And where an enactment supersedes the statute on which the litigants rely to define their rights, the appeal no longer represents an actual controversy, and the case will be dismissed as moot.

*Humane Soc'y of United States v. State*, 405 S.W.3d 532, 535 (Mo. banc 2013) (quoting *C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 325 (Mo. banc 2000)). Enactment of subsequent legislation will cause a challenge to a law to become moot if the law being challenged is repealed. *C.C. Dillon Co.*, 12 S.W.3d at 325.

At the outset, the County argues the enactment of section 443.454 renders the cause moot because the statute expressly prohibits what the ordinance permits. The County stated on appeal it would not enforce the ordinance going forward. However, the County concurrently argues this Court should hold the ordinance remains valid because of the County's charter authority granted to it pursuant to Missouri Constitution article

---

[3] One judge dissented, arguing the mediation program was a valid exercise of the County's broad authority to regulate municipal services and functions under Missouri Constitution article VI, section 18(c). The dissenting judge further argued the County made no claim that it would repeal the ordinance and remained free to resume enforcement at any time; hence, the controversy remained ripe for determination.

[4] The Business Bank of St. Louis filed an amicus brief in support of Bankers.

VI, section 18(c), which it believes takes precedence over any state statute. Further, it is undisputed the ordinance has not been repealed. Had the constitutional validity of the ordinance in light of the enactment of the statute been the only issue in the case, and had the ordinance been repealed after the statute's enactment, this Court's basis for deciding the ordinance's constitutional validity would have dissolved. *C.C. Dillon Co.*, 12 S.W.3d at 325. In light of the County's argument concerning the scope of its charter authority, and because the ordinance was not repealed after section 443.454 was enacted, the issues presented are not moot.

## Standard of Review

This Court's review of an appeal from summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when the record demonstrates there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hargis v. JLB Corp.*, 357 S.W.3d 574, 577 (Mo. banc 2011). "A summary judgment, like any trial court judgment, can be affirmed on appeal by any appropriate theory supported by the record." *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 264 (Mo. banc 2013).

Ordinances are presumed to be valid and lawful. *McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995). "An ordinance must be construed to uphold its validity unless it is 'expressly inconsistent or in irreconcilable conflict'" with a statute or provision of the Missouri Constitution. *Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood*, 107 S.W.3d 235, 238 (Mo. banc 2003) (quoting *McCollum*, 906

6

S.W.2d at 369). Whether the ordinance conflicts with state law is a question of law this Court reviews *de novo*. *State ex rel. Sunshine Enterprises of Missouri, Inc. v. Bd. of Adjustment of City of St. Ann*, 64 S.W.3d 310, 314 (Mo. banc 2002).

## Validity of the Ordinance

Bankers raise a number of arguments challenging the validity of the ordinance.[5] Among those arguments is whether Missouri Constitution article VI, section 18 grants the County the charter authority to enact the ordinance and whether that enactment takes precedence over other legislative enactments, such as section 443.454.[6] Bankers contend the County cannot invade the province of general legislation involving the public policy of the state as a whole, nor can it exempt itself from complying with state law by characterizing inconsistent ordinances as an exercise of municipal police power.

---

[5] Many of Bankers' points on appeal contain multifarious allegations of error. Rule 84.04(d) requires that a point relied on shall: (1) identify the challenged ruling; (2) concisely state the legal reasons for the claim of error; and (3) explain in summary fashion why the reasons support the claim of error. A point relied on violates Rule 84.04(d) when it groups together multiple contentions not related to a single issue and is subject to dismissal. *Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978). Nevertheless, when possible, "[t]his Court's policy is to decide a case on its merits rather than on technical deficiencies in the brief." *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998).

[6] Bankers also allege the ordinance conflicts with section 362.109, RSMo. Supp. 2008 (mandating that ordinances "shall be consistent with and not more restrictive than state law and regulations governing lenders or deposit-taking entities" regulated by the state division of finance); chapter 443 (regulating foreclosure and not requiring mediation prior to foreclosure); section 408.555, RSMo Supp. 2006 (entitling a lender to take possession after a notice period); section 442.020 (providing conveyance of deeds shall be made "without any other act or ceremony whatsoever"); chapter 53 (by creating additional responsibility for the county assessor beyond those enumerated in the statute); and Mo. Const. art. I, sec. 13 (prohibiting the passage of any law that impairs the obligation of contracts or is retrospective in its operation). All statutory references are to RSMo 2000 as supplemented.

*Article VI, Section 18(b) Charter Authority*

Article VI, section 18(b) provides that a charter county shall possess an implied grant of power "for the exercise of all powers and duties of counties and county officers prescribed by the constitution and laws of the state …." *See also Hellman v. St. Louis Cnty.*, 302 S.W.2d 911, 915 (Mo. 1957). This power is limited, however, in that "a charter or ordinance enacted under [section] 18(b), may not 'invade the province of general legislation' involving the public policy of the state as a whole." *Flower Valley Shopping Ctr., Inc. v. St. Louis Cnty.*, 528 S.W.2d 749, 754 (Mo. banc 1975) (quoting *State ex rel. Spink v. Kemp*, 283 S.W.2d 502, 514 (Mo. banc 1955)).

Bankers argue the County exceeded its charter authority under article VI, section 18(b) because the ordinance conflicts with the general laws and public policy of the state regarding foreclosures, particularly with section 443.454. The County acknowledges the legislature stated its express intent to regulate issues related to real property foreclosure as a statewide concern by passage of section 443.454, thus limiting a municipality's power to govern in this area. While the County concedes there is a direct conflict between the ordinance and section 443.454, it asserts that article VI, section 18(c) grants the County superior legislative authority and, as such, the ordinance supersedes the statute and remains valid.

*Article VI, Section 18(c) Charter Authority*

Article VI, section 18(c), as amended in 1970, authorizes a charter county to "provide for the vesting and exercise of legislative power pertaining to any and all services and functions of any municipality or political subdivision, except school

8

districts, throughout the entire county within as well as outside incorporated municipalities ….″ A charter county "functions in a dual capacity, sometimes performing state functions and sometimes performing municipal functions …." *Schmoll v. Housing Auth. of St. Louis Cnty.*, 321 S.W.2d 494, 498 (Mo. 1959). A charter county is not required to exercise the powers and duties granted to it in precisely the same manner as prescribed by the general law of the state. *Hellman*, 302 S.W.2d at 916.

One of the powers delegated by the state to charter counties pursuant to article VI, section 18(c) is the police power. *Casper v. Hetlage*, 359 S.W.2d 781, 789 (Mo. 1962). "Generally, the function of the police power has been held to promote the health, welfare, and safety of the people by regulating all threats either to the comfort, safety, and welfare of the populace or harmful to the public interest." *Craig v. City of Macon*, 543 S.W.2d 772, 774 (Mo. banc 1976). A charter county's exercise of the police power delegated by the state pursuant to article VI, section 18(c) is a governmental function. *Casper*, 359 S.W.2d at 789.

Several cases support the County's argument that the police powers delegated to a charter county are constitutional grants of authority that are not subject to, but take precedence over, the legislative power. *See State on Info. of Dalton ex rel. Shepley v Gamble*, 280 S.W.2d 656, 660 (Mo. banc 1955) (resolving *quo warranto* dispute concerning newly created charter county police department and conflicting state statutes); *Casper*, 359 S.W.2d at 789-90 (holding statutory provision requiring unanimous vote on rezoning was superseded and did not apply to charter county); *State ex rel. City of Creve Coeur v. St. Louis Cnty.*, 369 S.W.2d 184, 187 (Mo. 1963) (same); *St. Louis Cnty. v. City*

9

*of Manchester*, 360 S.W.2d 638, 641 (Mo. banc 1962) (permitting charter county to zone for sewage disposal plant).  Here, however, the question becomes whether the area the County intends to regulate pursuant to its police power is a matter of purely local concern.  *See State ex rel. St. Louis Cnty. v. Campbell*, 498 S.W.2d 833, 836 (Mo. App. 1973) (holding when a county is addressing a matter of purely local concern, the procedures specified in the charter supersede the statutes).

Regardless of its charter, the County remains a legal subdivision of the state. *Casper*, 359 S.W.2d at 784.  As such, it can only control "[m]atters of purely municipal, corporate concern …" and its actions "must be in harmony with the general law where it touches upon matters of state policy."  *Kansas City v. J.I. Case Threshing Mach. Co.*, 337 Mo. 913, 87 S.W.2d 195, 202 (Mo. banc 1935).  This Court has long recognized, "It is an essential element of all constitutional provisions establishing the principle of municipal home rule that the constitution and general laws of the state shall continue in force within the municipalities which have framed their own charters, and that *the power of the municipality to legislate shall be confined to municipal affairs*."  *Id*. (emphasis added). *See also Grant v. Kansas City*, 431 S.W.2d 89, 93 (Mo. banc 1968).  "Little purpose would be served in authorizing the adoption of charters of local self-government in the more populous counties if such counties could not adopt reasonable means and methods of carrying out their governmental functions in such a manner as to meet *the peculiar needs* of such counties."  *Hellman*, 302 S.W.2d at 916 (holding the problems attendant to uniform assessment of taxable property in the county was "*unique*") (emphasis added).

10

Here, the County explicitly states the ordinance was enacted to address "the national residential property foreclosure crisis" and its impact on the County. The County argues the municipal enactment of foreclosure mediation programs similar to its own had been recognized consistently as a valid exercise of municipal police power, citing one case from Rhode Island and two from Massachusetts for persuasive support. *See Deutsche Bank Nat'l Trust Co. v. City of Providence*, P.C. No. 10-1240 (Providence Superior Ct., May 17, 2010) (upholding city ordinance requiring foreclosure mediation, but severing deed recording requirements that conflicted with state law); *Easthampton Savings Bank v. City of Springfield*, 874 F. Supp. 2d 25 (D. Mass. 2012) (upholding city's foreclosure mediation ordinance in face of contracts clause, state preemption, and police powers challenges); and *Jepson v. Deutsche Bank Nat'l Trust Co.*, 969 F. Supp. 2d 202 (D. Mass. 2013) (discussing general benefits of pre-foreclosure mediation programs, but dismissing cause of action). While two of the three cases the County relies upon upheld municipal enactments in other jurisdictions, this Court is not bound by their holdings.[7]

Municipal regulations meant to address a national crisis, which affect every state in the country, are not a matter of such distinctly local concern that the County is authorized to legislate pursuant to its delegated police power. The question of whether

---

[7] The enactment of statewide programs across the country further undercuts the County's argument that its program addresses a purely local matter. At least twenty-three states have enacted some type of statewide foreclosure mediation program, either through state legislation or by way of state court rule, to address this national crisis. *See* Resolution Systems Institute, *Foreclosure Dispute Resolution Program Models State-By-State*, compiled by Heather Scheiwe Kulp, http://www.aboutrsi.org/pfimages/ForeclosureMediationProgramModels_September2012.pdf. (last accessed October 8, 2014; copy added to file).

11

lenders and residential borrowers should be required to participate in a mediation program prior to foreclosure and that mandates a lender obtain a certificate of compliance prior to filing a conveyance or face criminal prosecution is one of state interest. This finding is supported by the legislature's enactment of section 443.454, which explicitly limits a municipality's authority to govern this area. Accordingly, this issue is not a purely local concern that authorizes the County to regulate by local ordinance under the charter authority granted to it by article VI, section 18(c).

Acts performed by a county that are beyond the powers granted or necessarily implied from its charter are void. *Schmoll*, 321 S.W.2d at 498. To declare legislation "'void' means that it never had the authority to create any legal rights or responsibilities whatsoever." *R.E.J., Inc. v. City of Sikeston*, 142 S.W.3d 744, 746 (Mo. banc 2004). As a general rule, legislation that is unconstitutional is void *ab initio*. *State ex rel. Pub. Defender Comm'n v. Cnty. Court of Greene Cnty.*, 667 S.W.2d 409, 413 (Mo. banc 1984). This Court holds the circuit court erred in sustaining summary judgment in the County's favor on this claim because the County's implementation of the mediation program was void and unenforceable *ab initio*.

### Hancock Amendment

Bankers also brought a claim challenging the ordinance's validity under the Hancock Amendment. The Hancock Amendment prohibits a county from "levying any tax, license, or fees" without voter approval. Mo. Const. art. X, sec. 22(a). Any taxpayer may file suit to enforce a Hancock Amendment provision, and, "if the suit is sustained, shall receive from the applicable government his [or her] costs, including reasonable

12

attorneys' fees incurred in maintaining such suit." Mo. Const. art. X, sec. 23. Bankers claim their declaratory judgment action precipitated the invalidation of the ordinance and should be deemed "sustained" for purposes of an award of attorneys' fees.

Bankers' Hancock Amendment claim fails because this Court holds the County's implementation of the foreclosure mediation program was void *ab initio*. Even assuming the County obtained voter approval for levying the fees ordered by the ordinance, the County still lacked the charter authority to enact the program at its inception, much less impose any fees. Accordingly, the County could not violate the Hancock Amendment. It follows that that Bankers' claims for attorneys' fees must fail because their suit has not been "sustained" to warrant an award pursuant to article X, section 23.

## Conclusion

The circuit court erred in sustaining summary judgment in the County's favor because the ordinance implementing the mediation program was void and unenforceable *ab initio*. Bankers are not entitled to an award of attorneys' fees for their Hancock Amendment claim. The circuit court's judgment is reversed, and the case is remanded.

_____
GEORGE W. DRAPER III, JUDGE

Russell, C.J., Breckenridge, Fischer, Stith
and Wilson, JJ., concur; Teitelman, J.,
dissents in separate opinion filed.

13



# SUPREME COURT OF MISSOURI
## en banc

MISSOURI BANKERS ASSOCIATION,  )
INC., and JONESBURG STATE BANK,  )
  )
               Appellants,  )
  )
vs.  )    No. SC93848
  )
ST. LOUIS COUNTY, MISSOURI, and  )
CHARLIE A. DOOLEY,  )
  )
               Respondents.  )

Dissenting Opinion

I respectfully dissent from the principal opinion's holding that the County's foreclosure ordinance is void because it exceeds the County's legislative power granted by article VI, section 18(c) of the Missouri Constitution. I would hold that the ordinance is a valid exercise of the County's legislative power because the ordinance is precisely tailored to the local symptoms of the foreclosure crisis.[1]

Article VI, section 18(c) authorizes a charter county to enact legislation concerning "any and all services and functions of any municipality or political subdivisions, except school districts ...." Mo. Const. art. VI, sec. 18(c). As used

---

[1] This opinion draws on the well-reasoned dissent authored by the Honorable Lisa Van Amburg of the Missouri Court of Appeals, Eastern District.

in article VI, section 18(c), the County's "functions" include "all of the activity appropriate to the nature of political subdivisions or municipalities which combine to produce services, those specific acts performed by political subdivisions or municipalities for the benefit of the general public." *Chesterfield Fire Prot. Dist. Of St. Louis Cnty. v. St. Louis Cnty.*, 645 S.W.2d 367, 371 (Mo. banc 1983) (holding that St. Louis County's charter authority permitted the County to establish a countywide fire standards commission). The legislative powers granted by article VI, section 18 "are constitutional grants which are not subject to, but take precedence over, the legislative power." *State on Info. of Dalton ex rel. Shepley v. Gamb*le, 280 S.W.2d 656, 660 (Mo. banc1955). Thus, if the County enacts an ordinance that pertains to a County "function," that ordinance will supersede a state statute that touches upon that same issue. *See State ex rel. St. Louis Cnty. v. Campbell*, 498 S.W.2d 833, 836 (Mo. App. 1973) (St. Louis county charter provisions regulating the appointment of condemnation appraisers supersedes general state condemnation statutes). The dispositive question is whether the foreclosure ordinance pertains to a County "function" so that the County is empowered to legislate pursuant to article VI, section 18(c).

In *Casper v. Hetlage*, 359 S.W.2d 781, 789 (Mo. 1962), this Court specifically recognized that "the exercise of police power is a governmental function, [a portion of which] . . . has been delegated to St. Louis County by Section 18(c) of Article VI of the Constitution of Missouri." A traditional and long-recognized incident of the local government police power is the regulation of

2

the use and disposition of real property.   Consequently, Missouri cases have recognized that perhaps the "only consistent thread in the whole tangled skein of cases" on charter county power is that charter counties have substantial autonomy to regulate the disposition of real property within their borders.  *See State ex rel. St. Louis Cnty,* 498 S.W.2d 833 at 836 (explaining that "the power of condemnation is a matter of local concern so that the procedure specified in the charter supersedes the statutes"); *Williams v. Whit*e, 485 S.W.2d 622, 624 (Mo. App. 1972) ("[T]he power of a county under a Home Rule Charter to exercise legislative powers, including the adoption of zoning ordinances, is derived directly from the Constitution[;] ... when adopted such ordinances supersede statutory zoning provisions.").

Like ordinances regulating condemnation or zoning, the County's foreclosure mediation ordinance is essentially a regulation of the disposition of real estate within the County's borders.  The County foreclosure ordinance does nothing more than require mediation before homeowners are forced to involuntarily sell and vacate their homes.  The ordinance regulates the disposition of real estate and is, therefore, a valid exercise of the County's police power that is within the purview of a governmental "function" subject to the County's legislative power granted by article VI, section 18(c).

The principal opinion holds that the ordinance exceeds the County's legislative authority because it does not regulate local concerns.  More specifically, the principal opinion reasons that the ordinance (1) was enacted to

3

address a national crisis and (2) the ordinance is inconsistent with section 443.454, which provides that the enforcement and servicing of loans secured by mortgages shall be pursuant to state and federal law. I respectfully disagree with both propositions.

It is true, as the principal opinion notes, that the County enacted the ordinance to "address the national foreclosure crisis" and its impacts on the County. The fact that the underlying reasons for the foreclosure crisis involve national and international macroeconomic trends does not compel the conclusion that the localized symptoms of this crisis are beyond the County's constitutionally granted legislative power. For instance, the summary judgment record demonstrates that prior to enacting the foreclosure ordinance, the County experienced a substantial increase in the rate of foreclosures and an attendant decrease in property values and tax revenues.[2] In 2010, the foreclosure rate in St. Louis County was more than four times the historical norm. In some areas, foreclosure-related sales outnumbered owner-initiated sales by a factor of eight. The County's ordinance is directed specifically at ameliorating these purely local impacts or symptoms of the broader foreclosure crisis. I would hold, consistent with the cases cited by the principal opinion, that foreclosure mediation programs

---

[2] *See also* Karen Tokarz, Kim L. Kirn, & Justin Vail, FORECLOSURE MEDIATION PROGRAMS: A CRUCIAL AND EFFECTIVE RESPONSE BY STATES, CITIES, AND COURTS TO THE FORECLOSURE CRISIS, ST. LOUIS B.J., Summer 2013, at 28 (discussing the problems increased foreclosures impose on local governments).

like the one established by the County can be a valid exercise of local government police power.[3]

The principal opinion also asserts that section 443.454 explicitly limits the Count's power to regulate foreclosures and establishes that the County's ordinance conflicts with state law. It is true that a charter county ordinance cannot "invade the province of general legislation involving the public policy of the state as a whole …." *Flower Valley Shopping Cntr, Inc. v. Saint Louis County*, 528 S.W.2d 749, 754 (Mo. banc 1975). It is also indisputable that statutes passed by the legislature are an expression of public policy. *See State ex rel. Equality Sav. & Bldg. Ass'n v. Brown*, 334 Mo. 781, 68 S.W.2d 55, 59 (Mo. banc 1934). However, as noted, article VI, section 18(c) grants to charter counties legislative powers that are grounded in the constitution and "which are not subject to, but take precedence over, the legislative power." *Gamble*, 280 S.W.2d at 660. If the passage of section 443.454 could render the mediation program contrary to the "general legislation of the public policy of the state as a whole," then the scope of the County's constitutional grant of legislative power would be defined not by the text

_____

[3] *See Deutsche Bank Nat'l Trust Co. v. City of Providence*, P.C. No. 10-1240 (Providence Superior Ct., May 17, 2010) (upholding city ordinance requiring foreclosure mediation, but severing deed recording requirements that conflicted with state law); *Easthampton Sav.Bank v. City of Springfield*, 874 F.Supp.2d 25 (D. Mass. 2012) (upholding city's foreclosure mediation ordinance in face of contracts clause, state preemption, and police powers challenges); and *Jepson v. Deutsche Bank Nat'l Trust Co.*, 969 F.Supp.2d 202 (D. Mass. 2013) (discussing general benefits of pre-foreclosure mediation programs, but dismissing cause of action).

5

of the constitution but by the whim of the legislature.   Section 443.454 has no application in this case.

For the foregoing reasons, I would hold that the foreclosure ordinance is a valid exercise of the County's legislative power as granted by article VI, section 18(c) of the Missouri Constitution.

_____
RICHARD B. TEITELMAN, Judge